UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KIRK DOUGLAS, individually and on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br><br>                    -against-<br><br>ALLIED UNIVERSAL SECURITY SERVICES, ALLIED BARTON SECURITY SERVICES LLC and ALLIED SECURITY HOLDINGS LLC,<br><br>                                    Defendants. | Civil Action No. 17-cv-6093 (ARR)(SJB) |

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES

Defendants Allied Universal Security Services,[1] Allied Barton Security Services LLC,[2] and Allied Security Holdings LLC ("Defendants"), by and through their undersigned counsel, as and for its Answer to Complaint ("Complaint") of Plaintiff Kirk Douglas ("Plaintiff") in the above-captioned action, allege as follows:

## NATURE OF ACTION

1.      This is a collective and class action brought by Lead and Putative Class Representative Kirk Douglas (the "Representative Plaintiff" or "Lead Plaintiff") and all opt-in and/or putative plaintiffs (collectively, "Plaintiffs"), on their own behalf and on behalf of the collective classes and proposed Rule 23 classes identified below.  Plaintiffs and the Putative Collective Members and Class Members were or are employed by Allied Universal Security Services, Allied Barton Security Services, LLC and/or Allied Barton Security Holdings, LLC (together, "Defendants") as non-exempt hourly Airport Security Agents ("ASAs"), Lead Airport

---

[1] "Allied Universal Security Services" is not an existing corporate entity, and Plaintiff has named the wrong employer in his Complaint. At the time of his termination, Plaintiff was employed by Universal Protection Service, LLC doing business as Allied Universal Security Services. Further, neither AlliedBarton Security Services LLC nor Allied Security Holdings LLC were Plaintiff's employer at the time of his termination.

[2] Defendant Allied Barton Security Services LLC is spelled incorrectly in the Complaint. This entity's correct spelling is "AlliedBarton Security Services LLC."

Security Agents ("LASAs") (together with ASAs, "Security Agents"), Operations Assistants, and/or Supervisors at John F. Kennedy International Airport ("JFK").

ANSWER:     Defendants deny the allegations contained in Paragraph 1 of the Complaint, but admit that Plaintiff purports to bring claims as set forth therein and on behalf of the class of employees referenced therein.

2.     Defendants denied Plaintiffs and the Putative Collective and Class their minimum wage compensation, "gap time" compensation, and overtime compensation, and made unlawful deductions by separate transactions from Plaintiffs' wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and New York Labor Law ("NYLL") § 650 *et seq.* Defendants did this by, inter alia:

  i.   Requiring Security Agents, Operations Assistants and Supervisors to work "off-the-clock" before their scheduled shifts, during meal breaks, following the completion of their scheduled hours and while travelling between posts on JFK property;
  ii.  Failing to properly calculate their regular rate of pay;
  iii. Failing to reimburse Plaintiffs for the cost of necessary business expenses; and
  iv.  Failing to provide Plaintiffs and the Putative Class with accurate wage statements in violation of New York Labor Law ("NYLL") §195(3).

ANSWER:     Defendants deny the allegations contained in Paragraph 2 of the Complaint.

3.     The Putative Collective and Class are similarly situated to the Plaintiffs under Federal Rule of Civil Procedure ("FRCP") 23 and § 216(b) of the FLSA and have suffered the same violations pursuant to Defendants' common policies and practices.

ANSWER:     Paragraph 3 of the Complaint states legal conclusions concerning the collective and class actions Plaintiff purports to assert to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 3 of the Complaint and further deny that this action is appropriately maintained as a class or collective action.

4.      The Collective is made of all persons who are or have been employed by Defendants as Security Agents, Operations Assistants or Supervisors at JFK at any time within the three years prior to this action's filing date through the date of the final disposition of this action (the "Collective Period") and who were subject to Defendants' unlawful policy of failing to pay minimum wage compensation for all hours worked, failing to pay overtime premiums for all hours worked over 40 in a given workweek, failing to properly calculate the regular rate of pay, and/or failing to keep accurate records of hours Plaintiffs actually worked.

ANSWER:      Paragraph 4 of the Complaint states legal conclusions concerning the collective action Plaintiff purports to assert to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 4 of the Complaint and further deny that this action is appropriately maintained as a collective action.

5.      The Class is made up of all persons who are or have been employed by Defendants as Security Agents, Operations Assistants or Supervisors at JFK within the period of six years prior to this action's filing date (the "Class Period") and who were subject to Defendants' unlawful policy and/or practice of failing to pay Plaintiffs minimum wage, gap time compensation, and/or overtime premiums for all hours worked over 40 in a given workweek, failing to keep accurate records of hours Plaintiffs actually worked, subjecting Plaintiffs to a practice of unlawful deduction by separate transaction for business-related expenses, and/or failing to provide Plaintiffs with accurate wage statements reflecting all hours, including overtime and gap time hours worked.

ANSWER:      Paragraph 5 of the Complaint states legal conclusions concerning the class action Plaintiff purports to assert to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 5 of the Complaint and further deny that this action is appropriately maintained as a class action.

6.      Plaintiffs seek relief for the Collective under the FLSA and the Class pursuant to the applicable provisions of the NYLL, to remedy the Defendants' failure to pay all wages due, in addition to injunctive relief.

ANSWER:      Defendants deny the allegations contained in Paragraph 6 of the Complaint, but admit that Plaintiff purports to bring claims for relief under the statutes as set forth therein.

## **PARTIES**

7.      Individual and Representative Plaintiff Kirk Douglas is a former Security Guard and Supervisor, and presently and at all relevant times residing in Brooklyn, New York.  He began

providing security services at JFK in 2012, when FJC Security Services ("FJC") contracted with PANYNJ to provide such services at JFK.

ANSWER:    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of the Complaint concerning Plaintiff's residence or when Plaintiff started working for other employers.  Defendants admit Plaintiff previously worked as an Airport Security Agent and Tour Supervisor at JFK.  Defendants deny the remaining allegations in Paragraph 7 of the Complaint.

8.     In or around September 2013, Allied Barton took over FJC's contract with the PANYNJ.  Douglas continued to work at JFK as a Security Guard until summer of 2015, at which time he became a Supervisor.  He was terminated from Allied Barton in 2016.  At all relevant times, Plaintiff Douglas was an "employee" within the meaning of all relevant statutes.

ANSWER:    Paragraph 8 of the Complaint states legal conclusions concerning Plaintiff's legal status as an employee to which no responsive pleading is required.  Defendants admit AlliedBarton received a security services contract at JFK around September 2013, that Plaintiff subsequently became a Tour Supervisor, and that Plaintiff's employment terminated in 2016.  Defendants deny the remaining allegations in Paragraph 8 of the Complaint.

9.     Defendants Allied Barton Security Services, LLC and Allied Security Holdings LLC are Delaware corporations with offices in New York, New York.

ANSWER:    Defendants admit Allied Security Holdings LLC is a Delaware limited liability company and deny the remaining allegations in Paragraph 9 of the Complaint.

10.    Defendant Allied Universal Security Services ("Allied Universal") is a Pennsylvania corporation with offices at 229 West 36th Street, New York, NY 10018 and 199 Water Street, New York, NY 10038.  Allied Universal was formed in or around August 2016 as the result of a merger between Allied Barton and Universal Services of America. Allied Universal maintains that it is the largest security force in North America and employs over 140,000 individuals.

ANSWER:    Defendants admit that Allied Universal maintains that it is largest security force in North America and deny the remaining allegations in Paragraph 10 of the Complaint.

11.     Upon information and belief, Defendant Allied Universal is the parent of Allied Barton Security Services LLC and Allied Security Holdings LLC, both of which are wholly owned subsidiaries of Allied Universal.

ANSWER:     Defendants deny the allegations contained in Paragraph 11 of the Complaint

12.     At all relevant times herein, Allied Universal, Allied Barton Security Services LLC and Allied Security Holdings LLC met the definition of an "employer" of Plaintiffs under all applicable statutes, including the FLSA and NYLL.

ANSWER:     Paragraph 12 of the Complaint states legal conclusions concerning Defendants'

legal status as employers to which no responsive pleading is required.  To the extent a response is

required, Defendants deny the allegations in Paragraph 12 of the Complaint.

13.     The Lead Plaintiff and the putative Collective and Class were employed by all Defendants as a single employer.

ANSWER:     Defendants deny the allegations contained in Paragraph 13 of the Complaint.

14.     The Defendants controlled the work performed by Plaintiffs by setting corporate standards, setting employee policies and procedures and regulating employee behavior.

ANSWER:     Defendants deny the allegations contained in Paragraph 14 of the Complaint

15.     Upon information and belief, throughout the merger and acquisitions process ongoing between approximately 2013 through 2016, all Defendants have maintained a substantial continuity of business operations.  Defendants utilize the same facilities, substantially the same work force, substantially the same supervisory personnel, the same machinery, equipment, and methods of production and provide the same service.

ANSWER:     Defendants deny the allegations contained in Paragraph 15 of the Complaint

16.     At all relevant times, all the Defendants have met the definition of Plaintiffs' "employer" under Section 3(d) of the FLSA, 29 U.S.C. § 203(d) and NYLL §190(3).

ANSWER:     Paragraph 16 of the Complaint states legal conclusions concerning Defendants'

legal status as employers to which no responsive pleading is required.  To the extent a response is

required, Defendants deny the allegations in Paragraph 16 of the Complaint.

17.     Upon information and belief, Defendants maintain control, oversight, and direction over their operations and employment practices, including commonly managed human resources, benefits, and labor functions.

ANSWER:     Defendants deny the allegations contained in Paragraph 17 of the Complaint.

18.     At all relevant times, the Defendants have operated together as a single common enterprise in conducting business, including the business practices described in this Complaint.

ANSWER:     Defendants deny the allegations contained in Paragraph 18 of the Complaint.

19.     Upon information and belief, the Defendants are interrelated companies that have common ownership, officers, managers, products, services, and corporate purpose.

ANSWER:     Defendants deny the allegations contained in Paragraph 19 of the Complaint.

20.     At all times hereinafter mentioned, Defendants employed employees, including Plaintiffs, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials have moved in or produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) & (s).

ANSWER:     Paragraph 20 of the Complaint states legal conclusions to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 20 of the Complaint.

21.     Defendants' gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

ANSWER:     Paragraph 21 of the Complaint states legal conclusions to which no responsive pleading is required.  To the extent a response is required, Defendants admit only that they have collectively had gross operating revenues in excess of $500,000 at various times and deny the remaining allegations in Paragraph 21 of the Complaint.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  The Court also has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1332.

ANSWER:     Defendants admit Plaintiff seeks to establish jurisdiction.  Further responding, Paragraph 22 of the Complaint states legal conclusions to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 22 of the Complaint.

23.     In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 207 *et seq.*

ANSWER:     Defendants admit Plaintiff seeks to establish jurisdiction.  Further responding, Paragraph 23 of the Complaint states legal conclusions to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 23 of the Complaint.

24.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

ANSWER:     Paragraph 24 of the Complaint states legal conclusions to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 24 of the Complaint.

25.     Venue is proper in the United States District Court, Southern District of New York pursuant to 28 U.S.C. § 1391, because the violations described herein occurred in this district.

ANSWER:     Defendants admit Plaintiff seeks to establish venue.  Further responding, this action has been filed in the Eastern District of New York and Paragraph 25 of the Complaint states legal conclusions to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 25 of the Complaint.

26. This Court has personal jurisdiction over Defendants because they caused injury within the state (unpaid wages), routinely solicit and transact business in New York, and service substantial revenue from services rendered in New York State.

ANSWER: Defendants admit Plaintiff seeks to establish jurisdiction. Further responding, Paragraph 26 of the Complaint states legal conclusions to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph 26 of the Complaint.

## WAGE AND HOUR COLLECTIVE
## AND CLASS ACTION FACTUAL ALLEGATIONS

27. Defendants provide security services, janitorial services, and personnel services throughout the United States, including the New York metropolitan area.

ANSWER: Defendants deny the allegations contained in Paragraph 27 of the Complaint.

28. Since 2013, Defendants have provided security to facilities and property at JFK pursuant to a contract between and among Defendants and the PANYNJ.

ANSWER: Defendants deny the allegations contained in Paragraph 28 of the Complaint.

29. At all times relevant to this action, Defendants have directly employed approximately 300 Security Agents, Operations Assistants and Supervisors at JFK pursuant to Defendants' contract with the PANYNJ.

ANSWER: Defendants deny the allegations contained in Paragraph 29 of the Complaint.

30. Work rules required that Plaintiffs begin the workday by reporting to a central location at JFK, Building 14.

ANSWER: Defendants admit Plaintiff at times was required to report to Building 14 to begin his workday and deny the remaining allegations in Paragraph 30 of the Complaint.

31. At Building 14 Plaintiffs would receive their location assignments for the day.

ANSWER: Defendants admit Plaintiff received location assignments at Building 14 and deny the remaining allegations in Paragraph 31 of the Complaint.

32.     Defendants did not have an FLSA compliant timekeeping system, and instead required Plaintiffs and every member of the putative Collective and Class to sign in and out of a daily attendance log at the start and end of the shift, respectively.

ANSWER:     Defendants admit Plaintiff was required to sign in and out each day and deny the

remaining allegations in Paragraph 32 of the Complaint.

33.     Plaintiffs could not enter the actual time that they started or finished their workday, nor were they allowed to record the hours that they were on meal or rest breaks.

ANSWER:     Defendants deny the allegations contained in Paragraph 33 of the Complaint.

34.     Instead, the Plaintiffs' standard shift hours were pre-printed on the sheet and could not be altered without management's approval.

ANSWER:     Defendants deny the allegations contained in Paragraph 34 of the Complaint.

35.     ASAs were assigned to stationary posts throughout the airport and tasked with various security responsibilities, such as checking airport and airline employee identification credentials, performing inspections on vehicles entering airport areas through secured gates, and guarding against trespassers.

ANSWER:     Defendants admit security responsibilities may have included checking credentials,

inspecting vehicles, and watching for trespassers and deny the remaining allegations contained in

Paragraph 35 of the Complaint.

36.     LASAs were assigned tasks such as patrolling perimeter fences around airport runways and tarmacs, and watching the monitors in JFK's remote camera control room.

ANSWER:     Defendants admit security responsibilities may have included patrolling perimeter

fences around airport runways and tarmacs and watching a video monitor and deny the remaining

allegations contained in Paragraph 36 of the Complaint.

37.     Operations Assistants reported to Supervisors and helped the Supervisors carry out their office-related functions.

ANSWER:     Defendants admit Paragraph 37 of the Complaint.

38.     Supervisors would typically be assigned two to a shift and were responsible for overseeing the work of Operations Assistants and Security Agents. As such, Supervisors' duties included driving, or riding as a passenger, from location to location on JFK property, and much of their time was spent outside of their offices.

ANSWER:     Defendants admit two Tour Supervisors are assigned per shift and that duties may include driving to different locations and deny the remaining allegations contained in Paragraph 38 of the Complaint.

39.     In order to reach their assigned location, Plaintiffs were required to drive, or be a passenger in, official security vehicles owned and/or operated by Defendants. The time Plaintiffs spent driving in such official security vehicles was _always_ considered "on duty," even if their shifts had ended.

ANSWER:     Defendants admit some Airport Security Agents had to drive to their assigned locations and deny the remaining allegations contained in Paragraph 39 of the Complaint.

40.     Security Agents, Operations Assistants, and Supervisors were all paid on an hourly basis. Paid shifts would consist of eight (8) hours of regular time, and forty (40) total hours per week.

ANSWER:     Defendants admit Airport Security Agents, Operations Assistants, and Tour Supervisors were paid by the hour and that they were typically assigned to eight-hour shifts. Defendants deny the remaining allegations in Paragraph 40 of the Complaint.

41.     Pursuant to Plaintiffs' union contract, Security Agents, Operations Assistants and Supervisors were supposed to be allotted one fifty (50) minute unpaid lunch break per shift.

ANSWER:     Defendants admit Airport Security Agents received 50-minute lunch breaks and deny the remaining allegations in Paragraph 41 of the Complaint.

42.     Plaintiffs' meal breaks were scheduled; that is, an employee would have to take his/her break at specified times during his/her shift.

ANSWER:     Defendants admit lunch breaks for Airport Security Agents were sometimes scheduled and deny the remaining allegations in Paragraph 42 of the Complaint.

43.     While Plaintiffs were to receive a fifty (50) minute unpaid meal break, they were in practice only allotted ten (10) to twenty (20) minutes of a bona fide meal break time during their shifts to take their meal break.

ANSWER:     Defendants deny the allegations contained in Paragraph 43 of the Complaint.

44.     Additionally, as set forth in further detail below, Plaintiffs also had other twenty (20) minutes of unpaid time that should have been allotted towards Plaintiffs' lunch breaks was instead used by Defendants for an unpaid pre-shift "roll call".

ANSWER:     Defendants deny the allegations contained in Paragraph 44 of the Complaint.

45.     Because most, if not all, of Plaintiffs' lunch break was unpaid, and the daily twenty (20) minute roll call was also unpaid, in order to complete an eight-hour shift, Security Agents had to be present for at least nine (9) hours and twenty (20) minutes each day.

ANSWER:     Defendants deny the allegations contained in Paragraph 45 of the Complaint.

46.     When Security Agents, Operations Assistants and Supervisors worked more than forty hours in a scheduled week, they were entitled to one and one-half time their regular hourly rate of pay for that additional time, as overtime pay.

ANSWER:     Defendants admit nonexempt employees were paid all overtime required by

applicable law and deny the remaining allegations in Paragraph 46 of the Complaint.

**Defendants' Unlawful "Off the Clock" Practice of Forcing Security Agents to Work Before Their Shifts**

47.     Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

ANSWER:     Defendants incorporate, repeat and re-allege their answers to Paragraphs 1 through

46 of the Complaint as if set forth fully herein.

48.     All Security Agents were required to report for work twenty (20) minutes before the start of every shift for a "roll call" or attendance drill.

ANSWER:     Defendants admit some or all Airport Security Agents were required to report to

roll call and deny the remaining allegations in Paragraph 48 of the Complaint.

{V0472320.1}                                                    11

49.     At this time, Security Agents would sign in for the start of their shift, but were not permitted to sign in at the actual time they arrived for "roll call."

ANSWER:     Defendants admit Airport Security Agents signed in at the start of their shift and

deny the remaining allegations in Paragraph 49 of the Complaint.

50.     Instead, Security Agents would sign in for the time their assigned shift was supposed to begin, on a pre-printed sheet and did not record the twenty (20) minutes of unpaid pre-shift time required for "roll call."

ANSWER:     Defendants deny the allegations contained in Paragraph 50 of the Complaint.

51.     Because Security Agents were required to arrive at least twenty (20) minutes early each work day, without compensation for such time, each and every full five-day workweek (all weeks besides those weeks where a Security Agent took a sick day or vacation day) they worked at least 1 hour and 40 minutes of unpaid overtime.

ANSWER:     Defendants deny the allegations contained in Paragraph 51 of the Complaint.

52.     Lead Plaintiff Douglas worked at least one (1) hour and forty (40) minutes of unpaid overtime, due to time spent arriving early for the pre-shift "roll call" approximately forty (40) weeks or more each year of his employment with Defendants as a Security Agent.

ANSWER:     Defendants deny the allegations contained in Paragraph 52 of the Complaint.

53.     By way of further example, Ms. LaDonna Powell is a former Security Guard and Supervisor with Defendants, who began her employment with nonparty FJC in or around 2012, and continued to work for pre-merger Allied Barton when that entity contracted with PANYNJ to provide security services for JFK.

ANSWER:     Defendants deny knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 53 of the Complaint concerning when LaDonna Powell

started working for other employers.  Defendants admit LaDonna Powell previously worked as an

Airport Security Agent and Tour Supervisor at JFK.  Defendants deny the remaining allegations

in Paragraph 53 of the Complaint.

54.     Ms. Powell worked as a Security Guard until June 2014, at which time she became a Supervisor.  She was terminated from her position with Allied Barton in early 2016.

ANSWER:     Defendants deny the allegations contained in Paragraph 54 of the Complaint.

55.     By way of example, Ms. Powell worked at least one (1) hour and forty (40) minutes of unpaid overtime, due to time spent arriving early for the pre-shift "roll call" approximately forty (40) weeks or more each year of her employment with Defendants as a Security Agent.

ANSWER:     Defendants deny the allegations contained in Paragraph 55 of the Complaint.

### Defendants' Unlawful "Off the Clock" Practice of Forcing Security Agents to Work During Unpaid Lunch Breaks

56.     Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

ANSWER:     Defendants incorporate, repeat and re-allege their answers to Paragraphs 1 through

55 of the Complaint as if set forth fully herein.

57.     Defendants' work rules prohibited Security Agents, Operations Assistants and Supervisors from consuming food anywhere except designated areas on JFK property.

ANSWER:     Defendants deny the allegations contained in Paragraph 57 of the Complaint.

58.     An employee found consuming food at a post or inside a vehicle, for example, would be subject to disciplinary sanctions, and ultimately, termination.

ANSWER:     Defendants deny the allegations contained in Paragraph 58 of the Complaint.

59.     Security Agents, assigned to specific posts at JFK, would have to wait to take a meal break until a replacement showed up at their post to replace them. The replacement would be driven in a vehicle belonging to Defendants to the post in question, and the Security Agent leaving for his/her lunch break would then ride in the vehicle that had brought his/her replacement to the designated place for taking meals.

ANSWER:     Defendants admit that some Airport Security Agents needed a replacement to take

a meal break and that some drive away for the meal break in the replacement's vehicle.  Defendants

deny the remaining allegations in Paragraph 59 of the Complaint.

60.     After getting picked up, the Security Agents would be driven from post to post to pick up other Security Agents and then travel to the designated meal area.

ANSWER:     Defendants deny the allegations contained in Paragraph 60 of the Complaint.

61.     If a Security Agent's replacement appeared late to the post, the Security Agent's lunch break would not be extended on the back end – that is, the Security Agent was on-duty, at his/her post, during his/her allotted unpaid lunch break and was nonetheless required to return to

his/her post at the scheduled end time of the lunch break, despite not being relieved of their duties at the start of their lunch break.

ANSWER:     Defendants deny the allegations contained in Paragraph 61 of the Complaint.

62.     Because of JFK's vast geographic size, many employees were stationed far from their designated lunch area; thus, it would frequently take approximately twenty (20) minutes for Plaintiffs to reach the designated lunch area, including time spent on-duty at their posts waiting to be picked up.

ANSWER:     Defendants deny the allegations contained in Paragraph 62 of the Complaint.

63.     This process would be repeated on the way back to a Security Agent's post, taking another approximately twenty (20) minutes, leaving Plaintiffs only about 10 minutes to take a bona fide break.

ANSWER:     Defendants deny the allegations contained in Paragraph 63 of the Complaint.

64.     As detailed further below, the time spent in the Defendants' vehicle traveling to and from the lunch area was compensable time because Plaintiffs were not fully relieved of their security related duties during such travel time.

ANSWER:     Defendants deny the allegations contained in Paragraph 64 of the Complaint.

65.     By way of example only, time spent waiting for late replacements and traveling to and from the designated lunch area resulted in approximately three (3) hours and twenty (20) minutes of unpaid overtime for Plaintiff Douglas each and every full five-day workweek (all weeks besides those weeks where they took a sick day or vacation day) during his employment with Defendants as a Security Agent.

ANSWER:     Defendants deny the allegations contained in Paragraph 65 of the Complaint.

66.     Similarly, Ms. Powell worked approximately three (3) hours and twenty (20) minutes of unpaid overtime per week each and every full five-day workweek (all weeks besides those weeks where they took a sick day or vacation day) during her employment with Defendants as a Security Agent, due to waiting for replacements and traveling to and from the designated lunch area.

ANSWER:     Defendants deny the allegations contained in Paragraph 66 of the Complaint.

67.     Upon information and belief, all Security Agents experienced the same travel time and late relief issues that resulted in significant unpaid overtime hours each week.

ANSWER:     Defendants deny the allegations contained in Paragraph 67 of the Complaint.

68.     Furthermore, at least once per week, no relief would ever appear to allow a Security Agent to take their lunch break; however, Security Agents were not paid for these breaks that were missed entirely.

ANSWER: Defendants deny the allegations contained in Paragraph 68 of the Complaint.

69.     By way of example only, Ms. Powell was not relieved for her lunch break approximately once a week for the entirety of her time as a Security Agent.

ANSWER:     Defendants deny the allegations contained in Paragraph 69 of the Complaint.

70.     Ms. Powell frequently complained that she had not been relieved and was therefore unable to take any lunch break whatsoever.

ANSWER:     Defendants deny the allegations contained in Paragraph 70 of the Complaint.

71.     Despite her complaints, her manager and supervisor would simply promise that she would get paid for the time – but Ms. Powell was not paid for all her missed lunch breaks.

ANSWER:     Defendants deny the allegations contained in Paragraph 71 of the Complaint.

72.     Additionally, pursuant to Defendants' work rules, while driving or riding in a vehicle controlled by Defendants, all employees were "on duty."  Thus, they were required to be on the lookout for any security-related issues and in the event that they observed a security-related incident occurring while riding in or driving the vehicle, employees were required to take any and all necessary action.

ANSWER:     Defendants deny the allegations contained in Paragraph 72 of the Complaint.

73.     In addition, drivers were subject to Defendants' rules regarding the operation of the vehicle. If the employee driving the vehicle committed a traffic infraction and was ticketed by PANYNJ Police, or if the driver drove in a manner contrary to Defendants' rules regarding proper driving, that employee was subject to disciplinary action by Defendants, including termination.

ANSWER:     Defendants admit Airport Security Agents could be disciplined for inappropriate

driving and deny the remaining allegations in Paragraph 73 of the Complaint.

74.     Further, if, while riding in a vehicle, an employee-passenger observed the vehicle's driver committing a traffic infraction or otherwise driving in a manner contrary to Defendants' rules regarding proper driving, the employee-passenger was duty-bound to report such infraction to a supervisors or management.  If the employee-passenger failed to report the driver's infraction, that employee was herself subject to disciplinary action, up to and including termination.

ANSWER:     Defendants admit Airport Security Agents should report inappropriate driving and

deny the remaining allegations in Paragraph 74 of the Complaint.

75.     By way of example only, Plaintiff Douglas, as a former supervisor, is aware of specific situations which occurred during his employment in which ASAs, as employee-passengers, were disciplined for failing to report traffic infractions to management.

ANSWER:     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 75 of the Complaint regarding whether Plaintiff was aware of specific situations.  Defendants admit Kirk Douglas previously worked as an Airport Security Agent and Tour Supervisor at JFK.  Defendants deny the remaining allegations in Paragraph 75 of the Complaint.

76.     By way of further example, on one occasion as an ASA, as Ms. Powell was on her way to lunch, she witnessed a vehicle accident on the tarmac. Ms. Powell was required to stop at the accident, assist the driver and passengers, alert the proper authorities and compose a witness incident report. This process took at least an hour, requiring Ms. Powell to work through her entire break.

ANSWER:     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 76 of the Complaint regarding whether LaDonna Powell witnessed an accident.  Defendants deny the remaining allegations in Paragraph 76 of the Complaint.

77.     Nonetheless, Ms. Powell was not paid for that time.

ANSWER:     To the extent Plaintiff claims Ms. Powell was not paid for all time worked, Defendants deny the allegations contained in Paragraph 77 of the Complaint.  Defendants deny any remaining allegations contained in Paragraph 77 of the Complaint.

78.     Security Agents did not receive any overtime pay for the additional time they spent "on-duty" during their lunch breaks while waiting for a replacement, driving in a vehicle to or from a lunch break, responding to a security incident, or monitoring driving infractions. During that time each week Plaintiffs were working without pay.

ANSWER:     Defendants deny the allegations contained in Paragraph 78 of the Complaint.

79.     Upon information and belief, all Plaintiffs were subject to the same policies and practices that resulted in significant unpaid overtime for working through their meal break.

ANSWER:     Defendants deny the allegations contained in Paragraph 79 of the Complaint.

80. The SEIU would not file grievances on behalf of Security Agents who were forced to perform unpaid work during lunch breaks.

ANSWER: Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 80 of the Complaint regarding whether the SEIU would file grievances. Defendants deny the remaining allegations in Paragraph 80 of the Complaint.

**Defendants' Unlawful "Off the Clock" Practice of Forcing Supervisors and Operations Assistants to Work During Unpaid Lunch Breaks**

81. Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

ANSWER: Defendants incorporate, repeat and re-allege their answers to Paragraphs 1 through 80 of the Complaint as if set forth fully herein.

82. Supervisors and Operations Assistants were not permitted to take their fifty (50) minute lunch breaks.

ANSWER: Defendants deny the allegations contained in Paragraph 82 of the Complaint.

83. Supervisors were typically in the field to supervise the work of Security Agents, write incident reports, and send quality reports to upper management and corporate management.

ANSWER: Defendants admit Tour Supervisors sometimes worked outside the main office and deny the remaining allegations in Paragraph 83 of the Complaint.

84. Further, during "meal break shifts," so-called meal break shift Supervisors were required to work through their lunch while driving between locations relieving ASAs and LASAs to allow them to take their break.

ANSWER: Defendants deny the allegations contained in Paragraph 84 of the Complaint.

85. Finally, regardless of whether they worked the "meal break shift" or not, Supervisors were frequently unable to take a meal break or afternoon break since they were driving between posts and, because of the substantial drive time, did not have time to take a break.

ANSWER: Defendants deny the allegations contained in Paragraph 85 of the Complaint.

86.     Despite being deducted the full fifty (50) minutes from each shift for an unpaid meal break, Supervisors worked through their lunch nearly every day.

ANSWER:     Defendants deny the allegations contained in Paragraph 86 of the Complaint.

87.     By way of example, as a Supervisor, Ms. Powell was unable to take an uninterrupted meal break at least four (4) times per week, resulting in approximately three (3) hours and twenty (20) minutes of unpaid overtime each full five-day workweek.

ANSWER:     Defendants deny the allegations contained in Paragraph 87 of the Complaint.

88.     Ms. Powell was explicitly told on more than one occasion by her supervisor, Al Diaz, that Supervisors were not permitted to eat anywhere that someone could "see them," making it impossible to take a bona fide meal break.

ANSWER:     Defendants deny the allegations contained in Paragraph 88 of the Complaint.

89.     Furthermore, during her time as an Operations Assistant, Ms. Powell was not permitted to leave her desk for lunch and was required to answer phones at all times during her shift.

ANSWER:     Defendants deny the allegations contained in Paragraph 89 of the Complaint.

90.     Therefore, on the rare occasion during which she asked a Security Agent to pick her up something to eat, Ms. Powell was still unable to take a bona fide meal break because she was required to remain at her desk to be available to answer any phone call or request from upper management regarding the Supervisor that she was assisting, or face serious discipline.

ANSWER:     Defendants deny the allegations contained in Paragraph 90 of the Complaint.

91.     Upon information and belief, all Supervisors and Operations Assistants were subject to the same policies and practices that resulted in significant unpaid overtime for working through their meal break.

ANSWER:     Defendants deny the allegations contained in Paragraph 91 of the Complaint.

**Defendants' Unlawful, "Off-The-Clock" Post Shift Practices for Security Agents at JFK**

92.     Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

ANSWER:     Defendants incorporate, repeat and re-allege their answers to Paragraphs 1 through

91 of the Complaint as if set forth fully herein.

93.     After clocking in, Security Agents drove or rode to their posts in vehicles owned/and or operated by Defendants, and either spent their shifts in those vehicles riding around JFK and/or at a designated posting.

ANSWER:     Defendants admit some Airport Security Agents drove or rode to their posts in vehicles and that some spent their shifts in those vehicles or at a designated posting. Defendants deny the remaining allegations in Paragraph 93 of the Complaint.

94.     Rather than clock out at Building 14 – where they had clocked in – the Security Agents would sign out of their shifts at their posts, or in the vehicles to which they were assigned, at the exact end time of their scheduled shifts.

ANSWER:     Defendants deny the allegations contained in Paragraph 94 of the Complaint.

95.     Once they had signed out for the day, either at their post or in their vehicle, Security Agents were "off-the-clock" and not paid for any further time.

ANSWER:     Defendants deny the allegations contained in Paragraph 95 of the Complaint.

96.     Nonetheless, Defendants required Security Agents to continue working after their shift had ended between twenty (20) and forty-five (45) minutes per day at least three (3) days per week, resulting in a minimum of sixty (60) minutes of unpaid post-shift overtime per week per Security Agent.

ANSWER:     Defendants deny the allegations contained in Paragraph 96 of the Complaint.

97.     For example, despite signing out at their post, Security Agents were required to return to Building 14 at the ends of their shifts, in order to return the equipment and/or vehicles they had been provided that day.

ANSWER:     Defendants admit some Airport Security Agents were required to return to Building 14 at the end of their shifts and deny the remaining allegations in Paragraph 97 of the Complaint.

98.     Because of the large geographic area of JFK, after being relieved it could often take a Security Agent up to 35 minutes to travel back to Building 14.

ANSWER:     Defendants deny the allegations contained in Paragraph 98 of the Complaint.

99.     While driving back to Building 14 after their shifts had ended, Security Agents were "on duty," in the same way they were during their travel time to the lunch area during their lunch breaks.

ANSWER:     Defendants deny the allegations contained in Paragraph 99 of the Complaint.

100.    Security Agents were obligated to fulfill identical duties as security guards and supervisory security guards while traveling back to Building 14 as they were expected to while standing at their posts.

ANSWER:    Defendants deny the allegations contained in Paragraph 100 of the Complaint.

101.    By way of example only, on at least two occasions as a Security Agent, Ms. Powell witnessed a vehicle accident and was required to stop, provide assistance and prepare an incident report, despite being "off-the-clock" after her shift had ended.

ANSWER:    Defendants deny the allegations contained in Paragraph 101 of the Complaint.

102.    This process takes approximately forty-five (45) minutes to complete. However, Ms. Powell was not paid any wages for this post-shift off-the-clock work.

ANSWER:    Defendants deny the allegations contained in Paragraph 102 of the Complaint.

103.    In addition, and again, similar to their lunch breaks, at the end of their shifts Security Agents were required to stay at their posts until the Security Agent working the following shift arrived.

ANSWER:    Defendants admit certain posts could not be left unattended and deny the remaining allegations in Paragraph 103 of the Complaint.

104.    If the Security Agent for the following shift arrived at her assigned post after the end of the prior shift, the Security Agent assigned to the prior shift would not be paid for either the additional time spent at the post, or the time spent traveling back to Building 14.

ANSWER:    Defendants deny the allegations contained in Paragraph 104 of the Complaint.

105.    By way of example, including late relief, Lead Plaintiff Douglas spent at least twenty (20) minutes and upwards of forty (40) minutes traveling back to Building 14 to drop off their vehicles each shift during the entirety of his employment with Defendants as a Security Agent, resulting in between one (1) hour and twenty (20) minutes and three (3) hours and twenty (20) minutes of unpaid overtime per week.

ANSWER:    Defendants deny the allegations contained in Paragraph 105 of the Complaint.

106.    Ms. Powell also worked between one (1) hour and twenty (20) minutes and three (3) hours and twenty (20) minutes of unpaid overtime per week for off-the-clock post-shift work as a Security Agent.

ANSWER:    Defendants deny the allegations contained in Paragraph 106 of the Complaint.

107.   Upon information and belief, all Security Agents were subject to the same policies and practices that resulted in significant unpaid post-shift overtime for late shift relief and travel time.

ANSWER:   Defendants deny the allegations contained in Paragraph 107 of the Complaint.

108.   The SEIU would not file grievances on behalf of Security Agents who were forced to perform the "off the clock" work after their shift.

ANSWER:   Defendants deny knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 108 of the Complaint regarding whether the SEIU would

file grievances. Defendants deny the remaining allegations in Paragraph 108 of the Complaint.

**Defendants' Unlawful, "Off-The-Clock" Post Shift Practices for Supervisors at JFK**

109.   Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

ANSWER:   Defendants incorporate, repeat and re-allege their answers to Paragraphs 1 through

108 of the Complaint as if set forth fully herein.

110.   The majority of a Supervisor's work during their shift was comprised of traveling around the airport to monitor performance and quality of the work of Security Agents and provide assistance if necessary.

ANSWER:   Defendants admit Tour Supervisors were responsible for monitoring work

performance and quality and deny the remaining allegations in Paragraph 110 of the Complaint.

111.   Therefore, Supervisors were rarely in their offices at the end of their shift and were frequently at least thirty (30) minutes away from their office at the end of their shifts.

ANSWER:   Defendants deny the allegations contained in Paragraph 111 of the Complaint.

112.   Nonetheless, Supervisors would technically "sign out" of their shift the moment that their shift was scheduled to end.

ANSWER:   Defendants deny the allegations contained in Paragraph 112 of the Complaint.

113.   While traveling back to the office, in uniform, Supervisors were required to perform identical duties as during their shift, despite being technically "off-the-clock."

ANSWER:   Defendants deny the allegations contained in Paragraph 113 of the Complaint.

114.    By way of example only, while Ms. Powell was employed as a Supervisor, she was frequently required to stop her vehicle on the way back to her office in order to compose an incident report, send it to corporate management for approval, and report back that the incident was properly recorded, despite being "off-the-clock."

ANSWER:    Defendants deny the allegations contained in Paragraph 114 of the Complaint.

115.    By way of example only, this occurred at least two times per week and took approximately one (1) hour and thirty (30) minutes. Including travel time, on these occasions Ms. Powell worked approximately two (2) hours of unpaid overtime.

ANSWER:    Defendants deny the allegations contained in Paragraph 115 of the Complaint.

116.    Furthermore, Supervisors frequently had paperwork to complete upon returning to Building 14, requiring approximately forty-five (45) minutes of work several times per week after the end of their shifts.

ANSWER:    Defendants deny the allegations contained in Paragraph 116 of the Complaint.

117.    Finally, all Supervisors were required to attend a mandatory conference call, lasting approximately (3) hours, once a week on Tuesdays, regardless of whether the Supervisor was even scheduled for work that day.

ANSWER:    Defendants deny the allegations contained in Paragraph 117 of the Complaint.

118.    Supervisors, including Lead Plaintiff Douglas and Ms. Powell, were not paid for their time on this conference call, resulting in up to three (3) hours of unpaid overtime per week.

ANSWER:    Defendants deny the allegations contained in Paragraph 118 of the Complaint.

119.    Overall, on an average week, during their time as Supervisors, Lead Plaintiff Douglas and Ms. Powell, at minimum worked approximately ten (10) hours of overtime per week in post-shift work alone.

ANSWER:    Defendants deny the allegations contained in Paragraph 119 of the Complaint.

120.    Upon information and belief, all Supervisors were subject to the same policies and practices that resulted in such unpaid overtime for travel time and post-shift off-the-clock work.

ANSWER:    Defendants deny the allegations contained in Paragraph 120 of the Complaint.

**Defendants Have Knowledge of The Widespread "Off-The-Clock" Practices at JFK**

121.     Defendants' knowledge of the widespread "off-the-clock" practices at JFK was well known at all times relevant to this action.

ANSWER:     Defendants deny the allegations contained in Paragraph 121 of the Complaint.

122.     Defendants had on-site Human Resources personnel at JFK.  In addition, the JFK operations were run by a Project Manager.

ANSWER:     Defendants admit Human Resources personnel and a Manager were employed at

JFK and deny the remaining allegations in Paragraph 122 of the Complaint.

123.     During the relevant time period, Thomas Tarantola was the Project Manager.

ANSWER:     Defendants admit Thomas Tarantola has served as the Project Manager and deny

the remaining allegations in Paragraph 123 of the Complaint.

124.     Plaintiffs repeatedly made both Human Resources personnel and Mr. Tarantola aware of Defendants' "off the books" practices with respect to both lunch breaks and the end of shifts, both orally and in writing.  However, those complaints went unheeded.

ANSWER:     Defendants deny the allegations contained in Paragraph 124 of the Complaint.

125.     In one incident, when a guard complained to management about not receiving overtime for meals and working at the post past the end of the shift, a management employee took a dollar bill out of his pocket and threw it at the guard in an act of hostility.

ANSWER:     Defendants deny the allegations contained in Paragraph 125 of the Complaint.

126.     The amount of overtime due to Plaintiffs can be verified by time records and other documents that were contemporaneously maintained by Defendants.

ANSWER:     Defendants admit time records were maintained and that all overtime was paid and

deny the remaining allegations in Paragraph 126 of the Complaint.

127.     Plaintiffs came to understand that the Defendants' refused to pay them the overtime to which they were legally entitled because Defendants' contract with the PANYNJ did not provide for reimbursement of overtime by the PANYNJ to Defendants.

ANSWER:     Defendants deny the allegations contained in Paragraph 127 of the Complaint.

128.    Supervisors were unable to control the compensation and scheduling practices dictated by Defendants.

ANSWER:    Defendants deny the allegations contained in Paragraph 128 of the Complaint.

129.    Supervisors often received complaints directly from Security Agents, but were not authorized to make any changes to a Security Agent's pay.

ANSWER:    Defendants deny the allegations contained in Paragraph 129 of the Complaint.

130.    By way of example, while Ms. Powell was employed by Defendants as a Security Agent, she frequently complained about working unpaid overtime before and after her shift, as well as being unable to take a bona fide lunch break.

ANSWER:    Defendants deny the allegations contained in Paragraph 130 of the Complaint.

131.    Supervisors would tell Ms. Powell that they would "look into it" and get her paid.

ANSWER:    Defendants deny the allegations contained in Paragraph 131 of the Complaint.

132.    However, Ms. Powell was never paid for this off-the-clock pre- and post-shift time nor was she paid for time worked during an unpaid meal time.

ANSWER:    Defendants deny the allegations contained in Paragraph 132 of the Complaint.

133.    In or around 2015, when Ms. Powell became a Supervisor, she came to realize that Supervisors were under direct orders by upper management not to compensate Security Agents for their off-the-clock work, even when they complained.

ANSWER:    Defendants deny the allegations contained in Paragraph 133 of the Complaint.

134.    By way of example only, Managers Martin Feeney, Francisco Oravallo, and Christopher Timberlake all reacted in a similar manner when Ms. Powell would attempt to get Security Agents paid for their off-the-clock time.

ANSWER:    Defendants deny the allegations contained in Paragraph 134 of the Complaint.

135.    On numerous occasions, Ms. Powell was told by Mr. Feeney, Mr. Oravallo, and/or Mr. Timberlake, "What are they [Security Agents] complaining about? It's only 30 minutes!" or, "It's only 45 minutes!" On those occasions, Ms. Powell was instructed not to pay for the requested time.

ANSWER:    Defendants deny the allegations contained in Paragraph 135 of the Complaint.

136.    On numerous other occasions, Ms. Powell was told by Mr. Feeney, Mr. Oravallo, and/or Mr. Timberlake to simply "take [the requested time] out of their break." In other words, to

apply the off-the-clock work to an unpaid break in order to have the timesheets show that a break was taken.

ANSWER:     Defendants deny the allegations contained in Paragraph 136 of the Complaint.

137.    In actuality, of course, the Security Agents had not taken that break and were being forced to work unpaid overtime by the Defendants.

ANSWER:     Defendants deny the allegations contained in Paragraph 137 of the Complaint.

## **FLSA COLLECTIVE ACTION ALLEGATION**

138.    Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

ANSWER:     Defendants incorporate, repeat and re-allege their answers to Paragraphs 1 through 137 of the Complaint as if set forth fully herein.

139.    Defendants employed Plaintiffs during the Collective Period.

ANSWER:     Paragraph 139 of the Complaint states legal conclusions concerning legal employment status and the statute of limitations to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 139 of the Complaint and further deny that this action is appropriately maintained as a collective action.

140.    Defendants classified Plaintiffs and Members of the Collective as nonexempt for the purposes of the FLSA, paying them an hourly wage rather than an annual salary.

ANSWER:     Paragraph 140 of the Complaint states legal conclusions concerning exemption classification to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 140 of the Complaint and further deny that this action is appropriately maintained as a collective action.

141.    Upon information and belief, there are more than 300 current and former employees who are similarly situated to the Lead Plaintiff and who were similarly denied overtime compensation.

ANSWER:     Defendants deny the allegations contained in Paragraph 141 of the Complaint.

142.    Lead Plaintiff Douglas represents other employees, and is acting on behalf of Defendants' current and former employees' interests as well as his own interests in bringing this action.

ANSWER:    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 142 of the Complaint concerning Plaintiff's representation of other employees and interests in bringing this action. To the extent a response is required, Defendants deny the allegations in Paragraph 142 of the Complaint.

143.    Defendants unlawfully required Lead Plaintiff Douglas and all individuals employed as Security Agents, Operations Assistants and Supervisors to work through their unpaid meal breaks.

ANSWER:    Defendants deny the allegations contained in Paragraph 143 of the Complaint.

144.    Defendants also unlawfully required Lead Plaintiff Douglas and all individuals employed as Security Agents to arrive early for work for a required roll call without compensation for such time.

ANSWER:    Defendants deny the allegations contained in Paragraph 144 of the Complaint.

145.    Further, Defendants unlawfully required Lead Plaintiff Douglas and all individuals employed as Security Agents, Operations Assistants and Supervisors to work past the end of their shifts without compensation.

ANSWER:    Defendants deny the allegations contained in Paragraph 145 of the Complaint.

146.    At all times during the Collective Period, Defendants, as a matter of common policy and/or practice, have not paid Lead Plaintiff Douglas and all individuals employed as Security Agents, Operations Assistants and Supervisors lawful overtime premiums for all hours worked in excess of 40 hours in a work week and/or minimum wage compensation for hours worked under 40 in a work week.

ANSWER:    Defendants deny the allegations contained in Paragraph 146 of the Complaint.

147.    Plaintiffs seek to proceed as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and the following class of persons:

**Proposed Collective:** All individuals employed by Defendants as Security Agents, Operations Assistants and Supervisors at JFK and who, at any point during the Collective Period, earned but were not paid lawful FLSA overtime premiums for hours worked over 40 in a work week and/or the applicable federal statutory minimum wage for hours worked

under 40 in a workweek during the Collective Period based on the practices alleged herein.

ANSWER:     Paragraph 147 of the Complaint states legal conclusions concerning the collective

action Plaintiff purports to assert to which no responsive pleading is required.  To the extent a

response is required, Defendants deny the allegations contained in Paragraph 147 of the Complaint

and further deny that this action is appropriately maintained as a collective action.

148.    Specifically, Plaintiffs' Proposed Collective is further defined as involving (i) claims for unpaid overtime and minimum wage compensation for Defendants' practice of forcing Plaintiffs to work "off-the-clock" and without compensation during unpaid meal breaks; (ii) claims for unpaid overtime and minimum wage compensation for Defendants' practice of forcing Plaintiffs to work "off-the-clock" before the beginning and after the end of their shifts, which they knowingly suffered and permitted, and/or commonly enforced FLSA recordkeeping practice violations which resulted in unpaid wages.

ANSWER:     Paragraph 148 of the Complaint states legal conclusions concerning the collective

action Plaintiff purports to assert to which no responsive pleading is required. To the extent a

response is required, Defendants deny the allegations contained in Paragraph 148 of the Complaint

and further deny that this action is appropriately maintained as a collective action.

149.    As such, Lead Plaintiff Douglas and the Proposed Collective suffered damages for unpaid earned overtime wages under the FLSA in nearly all, if not all, the weeks they worked during the Collective Period.

ANSWER:     Defendants deny the allegations contained in Paragraph 149 of the Complaint.

150.    Defendants were aware or should have been aware that the law required them to pay all non-exempt employees, including Lead Plaintiff Douglas and the Proposed Collective, an overtime premium of 1 and ½ times their regular rate of pay for all work-hours Defendants suffered or permitted them to work in excess of forty (40) per workweek.

ANSWER:     Defendants admit they were aware of the need to comply with applicable overtime

payment laws and deny the remaining allegations in Paragraph 150 of the Complaint.

151.    Defendants' conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Lead Plaintiff Douglas and the Proposed Collective.

ANSWER:     Defendants deny the allegations contained in Paragraph 151 of the Complaint.

152.    Defendants are liable under the FLSA for failing to properly compensate Lead Plaintiff Douglas and the Proposed Collective, and as such, notice should be sent to the Proposed Collective.

ANSWER:    Defendants deny the allegations contained in Paragraph 152 of the Complaint.

153.    There are numerous similarly situated current and former employees of Defendants who were subject to the aforementioned policies in violation of the FLSA who would benefit from the issuance of a Court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit.

ANSWER:    Defendants deny the allegations contained in Paragraph 153 of the Complaint.

154.    Those similarly situated employees are known to the Defendants and are readily identifiable through Defendants' records.

ANSWER:    Defendants deny the allegations contained in Paragraph 154 of the Complaint.

## FEDERAL RULE OF CIVIL PROCEDURE
## RULE 23 NEW YORK CLASS ALLEGATIONS

155.    Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

ANSWER:    Defendants incorporate, repeat and re-allege their answers to Paragraphs 1 through 154 of the Complaint as if set forth fully herein.

156.    Plaintiffs seek to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following defined classes:

**Proposed Class:**    All individuals employed by Defendants as Security Agents, Operations Assistants and Supervisors at JFK and who, at any point during the Class Period, who earned but were not paid lawful NYLL overtime premiums for hours worked over 40 in a work week and/or the New York minimum wage for hours worked under 40 in a workweek during the Collective Class Period based on the practices alleged herein.

ANSWER:    Paragraph 156 of the Complaint states legal conclusions concerning the class action Plaintiff purports to assert to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 156 of the Complaint and further deny that this action is appropriately maintained as a class action.

157.    Specifically, Plaintiffs' Proposed Class is further defined as involving: (i) claims for unpaid overtime and minimum wage compensation for Defendants' practice of forcing Plaintiffs to work "off-the-clock" and without overtime and/or "gap time" compensation both during unpaid meal breaks, before the beginning of their shift and/or after the end of shifts which they knowingly suffered and permitted, and/or commonly enforced NYLL recordkeeping practice violations which resulted in unpaid wages; and (ii) claims for wage statement violations for Defendants' failure to provide Plaintiffs' with accurate wage statements on each payday that include the information required by NYLL §195(3), including the correct number of hours worked during the pay period.

ANSWER:    Paragraph 157 of the Complaint states legal conclusions concerning the class action

Plaintiff purports to assert to which no responsive pleading is required.  To the extent a response

is required, Defendants deny the allegations contained in Paragraph 157 of the Complaint and

further deny that this action is appropriately maintained as a class action.

158.    Defendants have violated NYCRR 142-2.2 and NYLL §§ 191, 193 by failing to pay Lead Plaintiff Douglas and the Proposed Class at least one and one-half times the New York state minimum wage for all hours worked over 40 during the class period pursuant to the same illegal practices and policies alleged above.

ANSWER:    Defendants deny the allegations contained in Paragraph 158 of the Complaint.

159.    Numerosity: The Proposed Class is so numerous that joinder of all members is impracticable. Plaintiffs are informed and believe, and on that basis allege, that during the Class Period, Defendants employed over 300 people who satisfy the definition of the Proposed Class.

ANSWER:    Paragraph 159 of the Complaint states legal conclusions concerning the class action

Plaintiff purports to assert to which no responsive pleading is required.  To the extent a response

is required, Defendants deny the allegations contained in Paragraph 159 of the Complaint and

further deny that this action is appropriately maintained as a class action.

160.    Typicality: Plaintiffs' claims are typical of those of the Proposed Class. Representative Plaintiff Douglas is informed and believes that, like other Security Agents, Operations Assistants and Supervisors, the Class Members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning the failure to pay proper wages, failure to keep adequate records and failure to furnish accurate wage statements.

ANSWER:    Paragraph 160 of the Complaint states legal conclusions concerning the class action

Plaintiff purports to assert to which no responsive pleading is required.  To the extent a response

is required, Defendants deny the allegations contained in Paragraph 160 of the Complaint and further deny that this action is appropriately maintained as a class action.

161.    Superiority: A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

ANSWER:    Paragraph 161 of the Complaint states legal conclusions concerning the class action Plaintiff purports to assert to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph 161 of the Complaint and further deny that this action is appropriately maintained as a class action.

162.    Adequacy: Representative Plaintiff Douglas will fairly and adequately protect the interests of the Proposed Class, and have retained counsel experienced in complex FLSA and NYLL class and collective action litigation.

ANSWER:    Paragraph 161 of the Complaint states legal conclusions concerning the class action Plaintiff purports to assert to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph 161 of the Complaint and further deny that this action is appropriately maintained as a class action.

163.    Lead Plaintiff Douglas's interests are co-extensive with those of the Proposed Class that they seek to represent. They are willing and able to fairly represent the Proposed Class and to vigorously pursue their similar individual claims in this action.

ANSWER:    Paragraph 163 of the Complaint states legal conclusions concerning the class action Plaintiff purports to assert to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph 163 of the Complaint and further deny that this action is appropriately maintained as a class action.

164.    Commonality: Common questions of law and fact exist to all members of the Proposed Class and predominate over any questions solely affecting individual members of the Proposed Class, including but not limited to:
      a.    Whether Defendants unlawfully failed to pay lawful overtime premiums for all hours worked over forty (40) in a workweek for those violations stated above;

      b.      Whether Defendants unlawfully failed to pay lawful "gap time" wages for all hours worked under forty (40) in a workweek for those violations stated above;Whether Defendants unlawfully failed to pay the state statutory minimum wage to members of the Proposed Class in violation of the NYLL;

      c.      Whether those violations were pursuant to a common policy or practice applicable to all class members;

      d.      Whether Defendants furnished class members with accurate wage statements on each payday containing the information required by NYLL § 195(3);

      e.      Whether Defendants kept and maintained records with respect to each hour worked by Plaintiffs and the Proposed Class;

      f.      Whether those violations were pursuant to a common policy or practice applicable to all class members;

      g.      Whether Defendants employed Plaintiffs and the Proposed Class within the meaning of New York law;

      h.      The proper measure of damages sustained by the Proposed Class; and

      i.      Whether Defendants' actions were "willful."

ANSWER:     Paragraph 164 of the Complaint states legal conclusions concerning the class action Plaintiff purports to assert to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 164 of the Complaint and further deny that this action is appropriately maintained as a class action.

     165.    These common questions of law and fact arise from the same course of events, and each class member will make similar legal and factual arguments to prove liability.

ANSWER:     Paragraph 165 of the Complaint states legal conclusions concerning the class action Plaintiff purports to assert to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph 165 of the Complaint and further deny that this action is appropriately maintained as a class action.

     166.    Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

ANSWER:     Paragraph 166 of the Complaint states legal conclusions concerning the class action Plaintiff purports to assert to which no responsive pleading is required. To the extent a response is

required, Defendants deny the allegations contained in Paragraph 166 of the Complaint and further deny that this action is appropriately maintained as a class action.

167.    The case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants.

ANSWER:    Paragraph 167 of the Complaint states legal conclusions concerning the class action Plaintiff purports to assert to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 167 of the Complaint, and further deny that this action is appropriately maintained as a class action.

168.    Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

ANSWER:    Paragraph 168 of the Complaint states legal conclusions concerning the class action Plaintiff purports to assert to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 168 of the Complaint and further deny that this action is appropriately maintained as a class action.

169.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Proposed Class predominate over any questions affecting only individual members of the Proposed Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' common and uniform policies and practices denied the Proposed Class the wages to which they are entitled. The damages suffered by the individual Proposed Class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

ANSWER:    Paragraph 169 of the Complaint states legal conclusions concerning the class action Plaintiff purports to assert to which no responsive pleading is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 169 of the Complaint and further deny that this action is appropriately maintained as a class action.

170.     Plaintiffs intend to send notice to all members of the Proposed Class to the extent required by Rule 23. The names and addresses of the Proposed Class are available from Defendants.

ANSWER:     Paragraph 170 of the Complaint states legal conclusions concerning the class action

Plaintiff purports to assert to which no responsive pleading is required. To the extent a response is

required, Defendants deny the allegations contained in Paragraph 170 of the Complaint and further

deny that this action is appropriately maintained as a class action.

171.     During the class period, and upon information and belief, Plaintiffs each worked more than 1 hour of gap time for which they were not paid the lawful straight time wage under either the NYLL and more than 1 hour of overtime-eligible work during the class and collective class periods for which they were not paid a lawful overtime premium of time and one half of their regular rate of pay.

ANSWER:     Defendants deny the allegations contained in Paragraph 171 of the Complaint.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Failure to Pay Overtime Compensation in Violation of the FLSA)

172.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

ANSWER:     Defendants incorporate, repeat and re-allege their answers to Paragraphs 1 through

171 of the Complaint as if set forth fully herein.

173.     Plaintiffs consent in writing to be a part of this action, pursuant to 20 U.S.C. § 216(b). Plaintiffs' written consent forms are attached hereto. Plaintiffs anticipate that as this case proceeds, other individuals will sign consent forms and join as plaintiffs.

ANSWER:     Defendants state that the referenced document speaks for itself and deny the

allegations in Paragraph 173 of the Complaint.

174.    At all relevant times, Defendants have been an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendants have employed and/or continue to employ employees, including Plaintiffs, and members of the Collective.

ANSWER:    Paragraph 174 of the Complaint states legal conclusions to which no responsive

pleading is required.  To the extent a response is required, Defendants deny the allegations in

Paragraph 174 of the Complaint.

175.    At all relevant times, upon information and belief, Defendants have gross operating revenues in excess of $500,000.00.

ANSWER:    Defendants admit they have collectively had gross operating revenues in excess of

$500,000 at various times and deny the remaining allegations in Paragraph 175 of the Complaint.

176.    The FLSA requires each covered employer to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per work week.

ANSWER:    Paragraph 176 of the Complaint states legal conclusions to which no responsive

pleading is required.  To the extent a response is required, Defendants deny the allegations in

Paragraph 176 of the Complaint.

177.    During their employment with Defendants, within the applicable statute of limitations, Plaintiffs and the other Collective members worked in excess of forty hours per workweek without lawful overtime compensation.

ANSWER:    Defendants deny the allegations contained in Paragraph 177 of the Complaint.

178.    Despite the hours worked by Plaintiffs and the Collective members, Defendants willfully, in bad faith, and in knowing violation of the FLSA, failed and refused to pay them overtime compensation.

ANSWER:    Defendants deny the allegations contained in Paragraph 178 of the Complaint.

179.    Plaintiffs were not paid FLSA mandated overtime premiums uniformly and based on the policies and practices articulated above.

ANSWER:    Defendants deny the allegations contained in Paragraph 179 of the Complaint.

180.    Also, by failing to accurately record, report, and/or preserve records of hours worked by Plaintiffs and the Collective, Defendants have failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA, 29 U.S.C. § 201, et seq.

ANSWER:    Defendants deny the allegations contained in Paragraph 180 of the Complaint.

181.    Plaintiffs and all similarly situated employees are victims of uniform and employer-based compensation policies. Upon information and belief, these uniform policies, in violation of the FLSA, have been applied, and continue to be applied, to all Security Agents, Operations Assistants and/or Supervisors employed by Defendants in JFK.

ANSWER:    Defendants deny the allegations contained in Paragraph 181 of the Complaint.

182.    Defendants have failed to make a good faith effort to comply with the FLSA with respect to its compensation to Plaintiffs and the Collective.

ANSWER:    Defendants deny the allegations contained in Paragraph 182 of the Complaint.

183.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a).

ANSWER:    Defendants deny the allegations contained in Paragraph 183 of the Complaint.

184.    Because Defendants' violations of the FLSA were willful, a 3-year statute of limitation applies, pursuant to 29 U.S.C. § 255.

ANSWER:    Defendants deny the allegations contained in Paragraph 184 of the Complaint.

185.    Due to Defendants' FLSA violations, Plaintiffs and the members of the Collective are entitled to recover from Defendants damages in the amount of their respective unpaid overtime compensation, liquidated damages, attorneys' fees and costs, and interest.

ANSWER:    Defendants deny the allegations contained in Paragraph 185 of the Complaint.

## AS AND FOR A SECOND CAUSE OF ACTION
**(Failure to Pay Minimum Wage Compensation in Violation of the FLSA)**

186.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

ANSWER:    Defendants incorporate, repeat and re-allege their answers to Paragraphs 1 through

185 of the Complaint as if set forth fully herein.

187.    At all relevant times herein, Plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

ANSWER:    Paragraph 187 of the Complaint states legal conclusions to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations in Paragraph 187 of the Complaint.

188.    The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce, per 29 U.S.C. §206(a); 29 U.S.C. § 207(a)(1).

ANSWER:    Paragraph 188 of the Complaint states legal conclusions to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations in Paragraph 188 of the Complaint.

189.    The Defendants are subject to the minimum wage requirements of the FLSA because they acted as an enterprise engaged in interstate commerce and its employees are engaged in commerce.

ANSWER:    Paragraph 189 of the Complaint states legal conclusions to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations in Paragraph 189 of the Complaint.

190.    Defendants, pursuant to their policy and practice, violated the FLSA by refusing and failing to pay Plaintiffs and other similarly situated employees a lawful minimum wage for all hours worked.

ANSWER:    Defendants deny the allegations contained in Paragraph 190 of the Complaint.

191.    Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from minimum wage obligations. None of the FLSA exemptions apply to Plaintiffs or other similarly situated employees.

ANSWER:    Paragraph 191 of the Complaint states legal conclusions to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations in Paragraph 191 of the Complaint.

192.    Plaintiffs and all similarly situated employees are victims of uniform and employer-based compensation policies. Upon information and belief, these uniform policies, in violation of the FLSA, have been applied, and continue to be applied, to all Security Agents, Operations Assistants and/or Supervisors employed by Defendants in JFK.

ANSWER:    Defendants deny the allegations contained in Paragraph 192 of the Complaint.

193.    Defendants have failed to make a good faith effort to comply with the FLSA with respect to its compensation to Plaintiffs and the Collective.

ANSWER:    Defendants deny the allegations contained in Paragraph 193 of the Complaint.

194.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a).

ANSWER:    Defendants deny the allegations contained in Paragraph 194 of the Complaint.

195.    Because Defendants' violations of the FLSA were willful, a 3-year statute of limitation applies, pursuant to 29 U.S.C. § 255.

ANSWER:    Defendants deny the allegations contained in Paragraph 195 of the Complaint.

196.    Due to Defendants' FLSA violations, Plaintiffs and the members of the Collective are entitled to recover from Defendants damages in the amount of their respective unpaid overtime compensation, liquidated damages, attorneys' fees and costs, and interest.

ANSWER:    Defendants deny the allegations contained in Paragraph 196 of the Complaint.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Failure to Pay Overtime Compensation in Violation of NYCRR § 142.2.2 and Article 19 of the NYLL)

197.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

ANSWER:    Defendants incorporate, repeat and re-allege their answers to Paragraphs 1 through

196 of the Complaint as if set forth fully herein.

198.   At all relevant times, Plaintiffs were employees and the Defendants have been employers within the meaning of the NYLL.

ANSWER:   Paragraph 198 of the Complaint states legal conclusions to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations in Paragraph 198 of the Complaint.

199.   The overtime wage provisions of NYLL Article 19 and its supporting regulations apply to Defendants.

ANSWER:   Paragraph 199 of the Complaint states legal conclusions to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations in Paragraph 199 of the Complaint.

200.   Defendants have failed to pay Plaintiffs and the Proposed Class the overtime wages to which they were entitled under the New York Labor Law.

ANSWER:   Defendants deny the allegations contained in Paragraph 200 of the Complaint.

201.   By Defendants' failure to pay Plaintiffs and the Proposed Class Members premium overtime wages for hours worked in excess of 40 hours per week, they have willfully violated NYLL Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

ANSWER:   Defendants deny the allegations contained in Paragraph 201 of the Complaint.

202.   Also, Defendants have violated NYCRR 142-2.2 and NYLL §§ 191 and 193 by failing to pay Plaintiffs and the Proposed Class at least one and one-half times the minimum wage for all hours worked over 40 in any workweek during the Class Period.

ANSWER:   Defendants deny the allegations contained in Paragraph 202 of the Complaint.

203.   Due to Defendants' violations of the NYLL, Plaintiffs and the Proposed Class are entitled to recover from Defendants all unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

ANSWER:   Defendants deny the allegations contained in Paragraph 203 of the Complaint.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Failure to Pay Minimum Wages and "Gap Time" Wages in Violation of
### NYLL §§ 191, 193 and 652 and Article 19

204.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

ANSWER:    Defendants incorporate, repeat and re-allege their answers to Paragraphs 1 through

203 of the Complaint as if set forth fully herein.

205.    At all relevant times, Plaintiffs were employees and the Defendants have been employers within the meaning of the NYLL.

ANSWER:    Paragraph 205 of the Complaint states legal conclusions to which no responsive

pleading is required. To the extent a response is required, Defendants deny the allegations in

Paragraph 205 of the Complaint.

206.    The minimum wage provisions of NYLL Article 19 and its supporting regulations apply to Defendants.

ANSWER:    Paragraph 206 of the Complaint states legal conclusions to which no responsive

pleading is required. To the extent a response is required, Defendants deny the allegations in

Paragraph 206 of the Complaint.

207.    Defendants have failed to pay Plaintiffs and the Proposed Class the minimum wages to which they were entitled under the NYLL.

ANSWER:    Defendants deny the allegations contained in Paragraph 207 of the Complaint.

208.    By Defendants' failure to pay Plaintiffs and the Proposed Class Members minimum wages, they have willfully violated the NYLL Article 19, §§ 652 *et seq.*, and the supporting New York State Department of Labor Regulations.

ANSWER:    Defendants deny the allegations contained in Paragraph 208 of the Complaint.

209.    Due to Defendants' violations of the NYLL, Plaintiffs and the Proposed Class are entitled to recover from Defendants their unpaid minimum wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

ANSWER:    Defendants deny the allegations contained in Paragraph 209 of the Complaint.

210.     Similarly, Defendants have failed to pay Plaintiffs and the Proposed Class the difference between the New York State minimum wage and their hourly rate of pay as determined by Defendants for all hours worked in a workweek, a practice that is unlawful under the NYLL.

ANSWER:     Defendants deny the allegations contained in Paragraph 210 of the Complaint.

211.     Specifically, Defendants failure to pay these – known as "gap time" wages under the relevant precedent – is prohibited by NYLL Section 193 which expressly prohibits an employer from making unauthorized deductions from employees' wages.

ANSWER:     Paragraph 211 of the Complaint states legal conclusions to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations in Paragraph 211 of the Complaint.

212.     Due to Defendants' violations of the NYLL, Plaintiffs and the Proposed Class are entitled to recover from Defendants all unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

ANSWER:     Defendants deny the allegations contained in Paragraph 212 of the Complaint.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Failure to Furnish Accurate Wage Statements in Violation of NYLL §195(3))

213.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

ANSWER:     Defendants incorporate, repeat and re-allege their answers to Paragraphs 1 through 212 of the Complaint as if set forth fully herein.

214.     At all relevant times, Plaintiffs were employees and the Defendants have been employers within the meaning of the NYLL.

ANSWER:     Paragraph 214 of the Complaint states legal conclusions to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations in Paragraph 214 of the Complaint.

215.   The recording keeping provisions of NYLL Article 19 and its supporting regulations apply to Defendants.

ANSWER:   Paragraph 215 of the Complaint states legal conclusions to which no responsive

pleading is required. To the extent a response is required, Defendants deny the allegations in

Paragraph 215 of the Complaint.

216.   Defendants did not provide Plaintiffs and members of the Rule 23 Class with a legally sufficient wage statement upon the payment of wages, as required by NYLL § 195(3).

ANSWER:   Defendants deny the allegations contained in Paragraph 216 of the Complaint.

217.   NYLL §195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria required under the NYLL.

ANSWER:   Paragraph 217 of the Complaint states legal conclusions to which no responsive

pleading is required. To the extent a response is required, Defendants deny the allegations in

Paragraph 217 of the Complaint.

218.   Due to Defendants' NYLL violations, Plaintiffs and Class members are entitled to statutory penalties of $100 for each workweek that Defendants failed to provide them with accurate wage statements, or a total of $2,500.00, reasonable attorneys' fees, costs, and injunctive and declaratory relief.

ANSWER:   Defendants deny the allegations contained in Paragraph 218 of the Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Lead Plaintiffs, on behalf of themselves and all members of the putative class and collective actions, prays for relief as follows:

A.   That the Court determine that this action may proceed as a class action under Rule 23(b)(1) and (3) of the Federal Rules of Civil Procedure;

B.   That Defendants are found to have violated the provisions of the New York Labor Law as to Plaintiffs and the Class;

C.   That Defendants are found to have violated the Fair Labor Standards Act as to Plaintiffs and the Collective;

D.   That Defendants' violations as described above are found to be willful;

E.     An award to Plaintiffs and the Collective of damages against Defendants and in favor of Plaintiffs and the Collective, plus such pre-judgment and post-judgment interest as may be allowed by law;

F.     An award to Plaintiffs and the Collective an additional equal amount as liquidated damages;

G.     An award to Plaintiffs and the Class of damages against Defendants and in favor of Plaintiffs and the Class, plus such pre-judgment and post-judgment interest as may be allowed by law;

H.     An award Plaintiffs and the Class an additional equal amount as liquidated Damages

I.     That Defendants further be enjoined to cease and desist from unlawful activities in violation of the FLSA and NYLL;

J.     That Plaintiffs' counsel and Plaintiff Kirk Douglas can adequately represent the interests of the class as class counsel and class representative, respectively.

K.     An award of reasonable attorneys' fees and costs pursuant to the FLSA, NYLL and/or other applicable law; and

L.     For such other and further relief, in law or equity, as this Court may deem appropriate and just.

ANSWER TO PRAYER FOR RELIEF: Defendants deny that Plaintiff, and/or any member of any purported class or collective actions, are entitled to any of the relief requested in the Section of Plaintiff's Complaint entitled "Prayer for Relief."  Defendants further deny that they violated the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), or any other statutory or common law; deny that they engaged in any conduct which caused Plaintiff and/or any member of any purported class or collective action to suffer harm; and deny that Plaintiff and/or any member of any purported class or collective action is entitled to the relief prayed for in the Complaint.

Defendants deny all claims and allegations not unequivocally admitted herein.  Defendants further request that this Court deny Plaintiff the relief sought and dismiss the Complaint in its entirety.

## DEFENSES AND AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Complaint, and each claim purported to be alleged therein, fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

Plaintiffs and/or some or all of putative class or collective members' claims are barred, in whole or in part, by the applicable statutes of limitations and/or governing administrative time limitations.

### THIRD DEFENSE

Plaintiffs and/or some or all of the putative class or collective members' claims, are barred, in whole or in part, because they failed to comply with or exhaust administrative, internal, and/or statutory remedies and/or prerequisites for bringing their claims.

### FOURTH DEFENSE

To the extent Plaintiff and/or any of the putative class or collective members have received other benefits and/or awards attributable to an injury for which they seek compensation in this case, such benefits and/or awards should offset, in whole or in part, any award they receive here for the same injury.

### FIFTH DEFENSE

To the extent Plaintiff, or any members of the putative class have signed a release and/or waiver encompassing claims alleged in the Complaint, or a contractual waiver or agreement contrary to their claims herein, their claims are barred by that release, waiver, or agreement.

## SIXTH DEFENSE

The Complaint fails to state a claim upon which an award of punitive damages can be granted.

## SEVENTH DEFENSE

Plaintiff and the putative class or collective members are not entitled to pre-judgment or post-judgment interest.

## EIGHTH DEFENSE

Plaintiff and the putative class or collective members are not entitled to statutory damages and/or penalties under New York Law.

## NINTH DEFENSE

Plaintiff's claims and/or some or all of the putative class or collective members' claims for costs, attorneys' fees, statutory damages, and possible future claims for liquidated damages, are barred in whole or in part because Defendants did not willfully violate the FLSA or NYLL and/or it acted in good faith and with reasonable grounds to believe that its actions, as alleged, did not violate legal requirements and/or are barred for other reasons.

## TENTH DEFENSE

Plaintiff's claims, and the claims of those individuals he purports to represent, are preempted by Section 301 of the Labor Management Relations Act. 29 U.S.C.A. § 185.

## ELEVENTH DEFENSE

Plaintiff and the putative class or collective members are not entitled to equitable relief insofar as they have an adequate remedy at law.

## TWELFTH DEFENSE

Plaintiff's claims and/or those of some or all of the putative class or collective members are barred because any damages are the result of their own conduct.

## THIRTEENTH DEFENSE

Plaintiff and/ or some or all of the putative class or collective members were paid and received all monies to which they were entitled and, therefore, by accepting payments made to them, have effectuated an accord and satisfaction of their claims.

## FOURTEENTH DEFENSE

Plaintiff and the putative class or collective members have failed to make reasonable efforts to mitigate their alleged damages, if any, as required by law.

## FIFTEENTH DEFENSE

Plaintiff and the putative class action members' claims are barred by the doctrine of res judicata and collateral estoppel.

## SIXTEENTH DEFENSE

The Complaint, and each claim purported to be alleged therein, is barred in whole or in part, by the equitable doctrines of laches, unclean hands, estoppel, waiver, and/or avoidable consequences.

## SEVENTEENTH DEFENSE

Plaintiff and the putative class or collective members' claims are barred in whole or in part by the doctrine of *de minimis non curat lex.*

## EIGHTEENTH DEFENSE

At all times material hereto, the actions of Defendants were justified under the circumstances, and at all times material hereto, Defendants acted in a manner that was proper, reasonable, and lawful, and in the exercise of good faith.

## NINETEENTH DEFENSE

With respect to some or all of the claims brought or allegedly brought by the Plaintiff on behalf of himself and/or on behalf of any putative class or collective action, any act(s) and/or omission(s) that may be found to be in violation of the rights afforded by applicable law were not willful but occurred in good faith and with reasonable grounds for believing that they were in complete compliance with applicable law.

## TWENTIETH DEFENSE

Plaintiff's claims and/or those of the putative class or collective members are barred, in whole or in part, because Defendants at all times acted in good faith to comply with the FLSA and/or NYLL and had reasonable grounds for believing it was in compliance with the FLSA and/or NYLL. Defendants assert a lack of willfulness or intent to violate the FLSA and/or NYLL as a defense to any future claim of liquidated damages made by Plaintiff and/or some or all of the putative class or collective members.

## TWENTY-FIRST DEFENSE

Plaintiff's claims and/or those of the putative class or collective members are barred, in whole or in part, because Defendants relied upon and acted in good faith and in conformity with written regulations, orders rulings, approvals, and/or interpretations of the U.S. Department of Labor, the New York State Department of Labor, and/or any administrative practice or enforcement policy of any applicable department of labor.

## TWENTY-SECOND DEFENSE

Plaintiff is unable to meet the criteria necessary to maintain a class action pursuant Fed. R. Civ. P. 23 or otherwise satisfy the requirements for class certification or satisfy the requirements for collective action certification pursuant to Section 216(b) of the FLSA. Therefore, any and all allegations in the Complaint on behalf of other individuals must be stricken and dismissed.

## TWENTY-THIRD DEFENSE

Plaintiff does not and cannot fairly and adequately represent the interests of the purported class or collective action. Further, Plaintiff's claims are not similar, common, or typical to those of the alleged "class" or "collective" members, and there is no basis in law or fact for a class or collective action.

## TWENTY-FOURTH DEFENSE

Plaintiff's class allegations must be dismissed because an independent and individualized analysis of each putative class or collective action member's claims and Defendant's defenses to such claims is required. Further, the class is unascertainable and the number of potential class or collective action members would be so numerous as to make joinder impracticable, and, therefore, Plaintiff's claims are not appropriate for class treatment.

## TWENTY-FIFTH DEFENSE

Plaintiff and/or some or all of the putative class or collective action members lack standing or are otherwise not entitled to bring, maintain, or participate in a class action.

## TWENTY-SIXTH DEFENSE

Even if Defendants violated any provision of the FLSA or the NYLL, such violation was not pursuant to a uniform policy or plan and no liability exists and/or a class action cannot be maintained.

## TWENTY-SEVENTH DEFENSE

Plaintiff and/or the putative class action members are precluded from recovering any amounts from Defendants where Defendants paid Plaintiff or the putative class action members all sums legally due under the FLSA, New York Minimum Wage Act, N.Y. Labor Law §§ 650 et seq., Article 6 of the New York Labor Law, N.Y. Labor Law §§ 190 et seq., and all of their implementing regulations (collectively "Applicable Law.")

## TWENTY-EIGHTH DEFENSE

Any future claim for liquidated damages is barred as: (1) Defendants and all officers, directors, managers, and agents acted in good faith and did not commit willful violation of Applicable Law; (2) Defendants and all officers, directors, managers, and agents did not authorize any such willful violation with respect to Plaintiff or any alleged member of any putative class action, the existence of which Defendants affirmatively deny; and (3) Plaintiff failed to plead facts sufficient to support recovery of such damages.

## TWENTY-NINTH DEFENSE

All affirmative defenses set forth in the New York Wage Theft Prevention Act including but not limited to Defendants having made complete and timely payment of all wages due.

## THIRTIETH DEFENSE

Defendants complied with their obligations under the New York Labor Law, Article 6, § 190, et. seq.

## THIRTY-FIRST DEFENSE

Plaintiff and/or some or all of the putative class or collective members are precluded from recovering any amounts from Defendants for failure to pay compensation for hours worked because such time was worked without manager knowledge or approval.

### THIRTY-SECOND DEFENSE

Plaintiff and the putative class or collective members' claims are barred in whole or in part to the extent that the work performed falls within exclusions, exceptions, offsets or credits provided for in Applicable Law.

### THIRTY-THIRD DEFENSE

Plaintiff and/or some or all of the putative class or collective members unjustifiably failed to avail themselves of the policies and procedures for reporting work time or seeking remedy of complaints or alleged violations of Defendants' policy.

### THIRTY-FOURTH DEFENSE

Even if Defendants, in fact, failed to pay Plaintiff and/or some or all of the putative class or collective members for any of the activities alleged in Plaintiffs Complaint, such activities do not constitute compensable work under any applicable law or regulation, and furthermore, such activities were not an integral and indispensable part of Plaintiffs principal activities of employment and are not compensable.

### THIRTY-FIFTH DEFENSE

Plaintiffs and/or some or all of the putative class or collective members' claims are barred in whole or in part as to all hours during which Plaintiff was engaged in activities which were preliminary or postliminary to his/their principal activities or incidental to them.

### THIRTY-SIXTH DEFENSE

Plaintiff, and the individuals he purports to represent, were at all times provided with appropriate postings and notices pursuant to Applicable Law.

## THIRTY-SEVENTH DEFENSE

Defendants assert all affirmative defenses provided by Section 195 of the New York Labor Law, and all statutory affirmative defenses to New York State record keeping requirements.

## THIRTY-EIGHTH DEFENSE

The Complaint is barred, in whole or in part, because Plaintiff and/or some or all of the putative class or collective members' claims are subject to mandatory, binding arbitration pursuant to an arbitration agreement they signed in connection with their employment. Defendants reserve the right to seek to compel individual arbitration, and also assert that some or all putative class or collective members are, or may become, subject to arbitration agreements, and further reserve the right to compel these individuals to arbitrate their claims individually.

## THIRTY-NINTH DEFENSE

Some or all Defendants were not the employer of Plaintiff and/or some or all of the putative class or collective members during the time period in question.

## FORTIETH DEFENSE

Plaintiff's claims, and the claims of those individuals he purports to represent, are barred in whole or in part by the provisions of Section 10 of the Portal-to-Portal Act, 29 U.S.C. § 259, because actions taken in connection with Plaintiff and the individuals he purports to represents' compensation were done in good faith in conformity with and reliance upon written administrative regulations, orders, rulings, approvals, interpretations, and written and unwritten administrative practices or enforcement policies of the Administrator of the Wage and Hour Division of the United States Department of Labor.

## FORTY-FIRST DEFENSE

No present or former employee of Defendant, other than Plaintiff, has consented in writing to this action or filed such consent with the Court.  Accordingly, Plaintiff's "collective" claims are invalid.

## OPPOSITION TO CLASS AND COLLECTIVE TREATMENT

Defendants oppose class and collective certification and disputes the propriety of class and/or collective treatment. If the Court certifies a class or collective action in this case over Defendants' objections, then Defendants assert the affirmative defenses set forth herein against each and every member of the certified class.

## RESERVATION OF RIGHTS

Because the Complaint is couched in conclusory terms, Defendants cannot fully anticipate all defenses that might be applicable to this action. Accordingly, Defendants reserve the right to assert such additional defenses that may appear and approve applicable during the course of this action.

**WHEREFORE**, having fully answered the Complaint, Defendants respectfully request that the Court issue an Order dismissing Plaintiff's Complaint in its entirety with prejudice, granting judgment in favor of Defendants, awarding costs, including attorneys' fees, to Defendants, and granting such other and further relief as the Court deems just and proper.


Dated: White Plains, New York
January 22, 2018

Respectfully,

Eckert Seamans Cherin & Mellott, LLC

By: *Riyaz G. Bhimani*
　　Riyaz G. Bhimani [RGB 7438]
10 Bank Street, Suite 700
White Plains, NY 10606
(914) 949-2909
rbhimani@eckertseamans.com

-and-

Martenson, Hasbrouck & Simon LLP
Elizabeth Bulat Turner, Esq.*
Wes McCart, Esq.*
Evan S. Weiss, Esq.*
* *Pro Hac Vice Forthcoming*
3379 Peachtree Road, N.E., Suite 400
Atlanta, Georgia 30326
(404) 909-8100
(404) 909-8120 (facsimile)
bturner@martensonlaw.com
wmccart@martensonlaw.com
eweiss@martensonlaw.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and accurate copy of the foregoing Defendants' Answer and Affirmative Defenses on behalf of Defendants Allied Universal Security Services, Allied Barton Security Services, LLC and Allied Security Holdings LLC was served this 22nd day of January, 2018, via the Court's CM/ECF system, and by regular mail, upon the following:

> Christopher Q. Davis, Esq.
> Rita Lenane, Esq.
> James Keneally, Esq.
> The Law Office of Christopher Q. Davis
> 225 Broadway, Suite 1803
> New York, New York 10007

*/s/ Riyaz G. Bhimani*
Riyaz G. Bhimani