UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KIRK DOUGLAS,
    *individually and on behalf of all others similarly situated*,

                              Plaintiff,

        -against-                        **ORDER**
                                                        17-CV-6093-SJB

ALLIED UNIVERSAL SECURITY SERVICES,
ALLIED BARTON SECURITY SERVICES LLC,
ALLIED SECURITY HOLDINGS LLC,

                              Defendants.
-----------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

       The parties have moved for reconsideration of the Court's prior decision declining to grant preliminary approval of their proposed class and collective action settlement. The motion for reconsideration contends that the Court's conclusion—finding that the proposed settlement was structurally incompatible with *Cheeks* and Section 216(b) of FLSA—rested on "overlooked facts and misapplied legal precedents." (Mem. of Law in Supp. of Joint Mot., attached as Ex. 1 to Joint Mot. for Reconsideration, Dkt. No. 45 ("Joint Mem.") at 1). It did not. The motion for reconsideration is denied.

       The problems with the parties' collective action settlement are manifold. Under the settlement proposed, a putative FLSA collective member receives a settlement check and opts into the collective by endorsing and cashing that check. The proposed settlement also has plaintiffs opting into the collective *after* the final fairness hearing and asks the Court to dismiss with prejudice the claims of collective members at the fairness hearing—and therefore before they opt in. *See Douglas v. Allied Universal Sec.*

*Servs.*, No. 17-CV-6093, 2019 WL 1578072, at *5-6 (E.D.N.Y. Mar. 29, 2019). Such procedures are fundamentally at odds with the nature of collective action opt-in practices, which is to have the parties appear before the Court *prior* to final resolution. This takes on particular significance in the context of *Cheeks*, which requires the Court to opine about the fairness of a settlement dismissing FLSA claims with prejudice and often requires the Court to interrogate the parties about the facts and circumstances of the settlement. *See id.* at *2 (citing *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) and *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012)). The Court obviously cannot perform that function if a party joins a case *after* it holds the final hearing approving the settlement.

The parties have offered a number of different justifications for this arrangement, ranging from assertions that the Court misapprehended the settlement to a plea that the Court simply follow along with what other courts have done. These arguments fall apart when analyzed with any scrutiny:

1.  The parties contend that the Court erred by relying on *Xiao Ling Chen v. XpresSpa at Terminal 4 JFK LLC*, a case that also rejected a similar collective action settlement. (*See* Joint Mem. at 4-6 (citing No. 15-CV-1347, 2018 WL 1633027 (E.D.N.Y. Mar. 30, 2018))). According to the parties, the problems in *Xiao Ling Chen* are absent from this case, because the employees in this case are given notice of the final hearing—which is both a hearing on the NYLL class action *and* the FLSA collective action—even if they do not opt in until later.

The notice to collective members does not solve the structural problems with the settlement. A putative collective action member cannot object to the FLSA settlement—even at the final hearing—because they have not yet opted into the case. They only opt

into the case when they endorse the settlement check, which the employee receives *after* the hearing is held.

It is stunning for the parties to take this position regarding notice, given their initial submissions to the Court.  The initial notice was for a "Proposed Class Action Lawsuit Settlement and Final Fairness Hearing;" there was barely any mention of the collective action component or the fact that an objection to the collective action could be heard at the fairness hearing.  (*See generally* Notice of Proposed Class Action, attached as Ex. 1 to Settlement Agreement, attached as Ex. 1 to Decl. of Christopher Q. Davis, Dkt. No. 34).  The objection section of the notice only stated "[i]f you choose to stay *in the class*, you can tell the Court that you don't agree with the settlement or some part of it.  This is called objecting to the settlement.  The Court will consider your views." (*Id.* at 8 (emphasis added)).  In other words, the parties did not behave as if the final hearing was one where *collective* action members could be heard.  And they still do not.  The current revised notice does not state anywhere that someone who opposes the collective may be heard on such objections.  The same language about objections from the original notice remains.  (*See* Am. Class/Collective Notice, attached as Ex. 1 to Letter dated Feb. 18, 2019, Dkt. No. 41 at 9).  There is no mention in the notice of an ability to object to the collective action.

The argument that the *Xiao Ling Chen* settlement would have been approved—if the court had a more robust notice, akin to the one in this case—is pure conjecture.  Nothing in *Xiao Ling Chen* says that.  The argument also ignores the fundamental problem that Judge Pollak had with the settlement, which is that it had the court disposing, with prejudice, of claims of collective action members before they appeared.  When employees opted into the collective, their claims had already been dismissed.

3

That created a double incongruity: the Court dismissing claims of individuals not before it, and then employees opting into an action to assert and settle claims they no longer have. *See Xiao Ling Chen*, 2018 WL 1633027, at *6. Indeed, Judge Pollak said as much in her hearing following the *Xiao Ling Chen* decision. (Tr. of Hearing dated Apr. 25, 2018, No. 15-CV-1347, Dkt. No. 89, at 8:8-15 ("[Y]ou're asking me to approve a settlement, find it fair under *Cheeks* which as we all know, is one of these cases that seems to suggest that the Court has to take into account the protected nature of the FLSA and you're asking me to do that before I have jurisdiction over the parties who I am saying it's fair or not fair. I just feel like we're putting the cart before the horse.")).

The same incongruity is present here. This is no surprise since the settlement structure in *Xiao Ling Chen* is substantively identical to the one proffered here. (*Compare* Settlement Agreement, attached as Ex. 1 to Decl. of Christopher Q. Davis, Dkt. No. 34 ("Douglas Settlement Agreement") ¶¶ 2.3, 3.9, 4.4 (providing that employees can opt into the FLSA collective by cashing the settlement check, which would be mailed after the final fairness hearing and order of dismissal), *with* Settlement Agreement, attached as Ex. 1 to Decl. of C.K. Lee, No. 15-CV-1347, Dkt. No. 85 ("Xiao Ling Chen Settlement Agreement") ¶¶ 3.7, 3.9, 5.1 (same)). *Xiao Ling Chen* is hardly inapposite.

2. Spending their time on *Xiao Ling Chen*, the parties fail to address the double incongruity identified by the Court in its prior Order, and the fact that the proffered settlement is incompatible with *Cheeks*:

> The proffered structure has the Court opining on the fairness of a settlement—that is not a class action—of employees who are not before the Court and dismissing their claims with prejudice before they ever appear. If the Court did so, then recipients of the settlement checks would have not litigation to opt in to. The procedure set forth in the Agreement—namely

4

> that an individual opts in and simultaneously settles his or her claim by depositing a check—simply makes no sense in the context of *Cheeks*. *Most importantly, however, this framework releases a claimant's FLSA claims without consent and creates the possibility that, should a claimant decline to join the FLSA settlement by failing to cash the check, he or she would neither have the benefit of the settlement nor the ability to bring . . . a FLSA action.* This would give the employee effectively no alternative but to accept the check, a Hobson's choice that *Cheeks* and a true opt-in process is intended to avoid.

*Douglas*, 2019 WL 1578072, at *6 (emphasis added) (citations and quotations omitted) (alterations omitted).  The parties take issue with the italicized sentence—contending that the Court misapprehended the settlement agreement.  (Joint Mem. at 6 ("The Settlement Agreement itself, however, states in several sections that only class/collective members who endorse and cash a settlement check will release their FLSA claims.  To the extent the Order is based on the inaccurate assumption that potential collective action members would release their claims even if they do not cash their settlement checks, the parties respectfully request reconsideration.") (citations omitted)).  The Court understands that the settlement agreement is written in a way to suggest that only those members who cash the check waive their FSLA claims, *i.e.* the employee has a choice to retain their FLSA claims and not join the settlement, and no actual dismissal occurs until a check is cashed and endorsed.  But the remainder of the agreement nullifies the choice; any option not to waive FLSA claims or opt into the collective is illusory.  An employee will receive a single settlement check from the Defendants.  Should she decide not to endorse the check—in order to preserve FLSA claims—she will not receive any of her NYLL proceeds, but she still will have waived her NYLL claims (because the time to opt out of the NYLL class will have passed).  No employee would avoid cashing the check—to do so would mean forfeiting the NYLL proceeds without retaining any ability to bring NYLL claims.  And if the check is cashed, the FLSA claims

5

are waived. The choice presented is illusory because it extracts a penalty for choosing not to opt in: forfeiture of all NYLL claims. *See Sharobiem v. CVS Pharmacy, Inc.*, No. 13-CV-9426, 2015 WL 10791914, at *3 (C.D. Cal. Sept. 2, 2015) ("[I]f a Class Member chooses not to opt-into the FLSA collective action by not filing a claim form, he or she would have released all state law claims for no compensation at all. In essence, Class Members are assessed a penalty (in the full amount of their share of the settlement) for not opting-into the FLSA class. We question the legality of imposing such a penalty on the exercise of a federal right to not opt-in under the FLSA.").

      Even accepting that a coerced choice is still a choice, the Court's other concerns are not alleviated by the fact that only those who cash checks waive FLSA claims. There remains the issue that the Court is opining on the fairness of a settlement and dismissing the FLSA claims with prejudice *before* such parties are before the Court. As a technical matter, the Court's dismissal becomes effective upon cashing of the settlement check. But because the final fairness hearing takes place before the checks are mailed, the Court orders the dismissal prior to the employee's appearance in the case. That means that an employee has no opportunity whatsoever to come before the Court, to object or otherwise be heard, or for the Court to hear from the employee should the need arise. The Court would conduct a *Cheeks* fairness review—to determine whether the employer has overreached in obtaining a settlement from the employee under dubious circumstances—without the employee present. *See Douglas*, 2019 WL 1578072, at *5-6. And counsel who is advocating for the dismissal and the fairness of the arrangement—*i.e.* Douglas's current counsel and class counsel—would not have been authorized to act on the employee's behalf, since they are not representing those employees with respect to FLSA claims. In addition, as noted above, the notice in its

6

current form fails to inform parties that they may be heard on the FLSA claims at the final hearing. This process of adjudicating FLSA claims of individuals not before the Court—outside of a class action—without giving them an opportunity to be heard may not offend due process, but it certainly comes close. And it makes no sense in the context of a *Cheeks* review. "[T]o approve an 'agreement' between an employer and employees outside of the adversarial context of a lawsuit brought by the employees would be in clear derogation of the letter and spirit of the FLSA." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982).

3. The parties' attempted fix to the settlement demonstrates their lack of appreciation of the *Cheeks* problem or the problem with the Court opining on claims and parties not before it. The prior Order noted that a FLSA collective action cannot proceed if the consents to join are not filed with the Court. *See Douglas*, 2019 WL 1578072, at *5. The parties attempt to remedy this by having the attorneys file a stipulation with all the names of individuals who cash settlement checks *six months* after checks are mailed. This otiose amendment ignores the purpose of the filing requirement in a collective action—to have the employee present before the Court as a *party* in the litigation. Giving the Court a list of names of individuals after a fairness hearing has been held and claims have been dismissed does nothing—it provides no ability for the employee to participate in the fairness hearing; contend that they should have received more in the settlement; argue that their FLSA damages were miscalculated and they are entitled to more; or answer the Court's inquiries if necessary. *See Smothers v. NorthStar Alarm Servs., LLC*, No. 17-CV-548, 2019 WL 280294, at *11 (E.D. Cal. Jan. 22, 2019) (rejecting proposed arrangement of having names of opt-in

7

plaintiffs filed with the court as inconsistent with the Section 216(b) requirement that consent be filed).

The parties also cite to *Shahriar v. Smith & Wollensky Restaurant Group, Inc.* to argue that Rule 23 controls "in hybrid class/collective actions because it is more favorable to plaintiff-employees" and thus plaintiffs can release FLSA claims by endorsing a check, without Section 216(b)'s consent to join requirement. (Joint Mem. at 8 (citing 659 F.3d 234 (2d Cir. 2011))). Parties misapprehend *Shahriar*, which does not dispense with the FLSA requirement that plaintiffs affirmatively opt into a FLSA collective nor speak to the other issues present in the parties' proposed settlement structure. In fact, *Shahriar* repeatedly refers to FLSA's consent to joint requirement. *See, e.g.*, *Shahriar*, 659 F.3d at 244 ("The FLSA requires . . . that an employee affirmatively consent to join a 'collective action' in order to assert a claim."). *Shahriar* simply holds that a court can exercise supplemental jurisdiction over state law class action claims in the context of a FLSA collective action. *Id.* at 250. The question in this case is not whether this Court can simultaneously have a state law class action with a FLSA collective—of course it can—but whether the structure for collective action opt in is consistent with FLSA and *Cheeks*.

4. The parties then suggest the Court should accept the proposed structure because a number of other courts in this District have done so. (*See* Joint Mem. at 10-11 (citing 15 cases that allegedly "utilize[e] the very same check cashing opt-in mechanism the parties propose here")). This *sub silentio* practice does not make the structure sound. Of the 15 cases cited, five involved preliminary court approval using the parties' proposed orders, (*see, e.g.*, *Gittens v. 7-Eleven, Inc.*, No. 17-CV-6378, Order dated July 31, 2018, Dkt. No. 29), and eight involved preliminary court approval with little or no

8

explanation, (*see, e.g.*, *Cano v. Nineteen Twenty Four, Inc.*, No. 15-CV-4082, Order dated Dec. 30, 2016).  And none of the cases addressed the problems identified by this Court's prior Order.  "While the ultimate result in these cases is an approval of a release regime mirroring the one proposed . . . , none of these courts addressed the [Court's] concerns."  *Sharobiem*, 2015 WL 10791914, at *3.

The cases are also distinguishable.  For example, in *Bijoux v. Amerigroup N.Y., LLC*, the parties defined FLSA class members as those "who filed Consent to Join Forms with the Court *on or before the complete execution of this Agreement*."  (Settlement Agreement, attached as Ex. A to Decl. of Rachel Bien, No. 14-CV-3891, Dkt. No. 74 ("Bijoux Settlement Agreement") ¶ 2.8 (emphasis added)).  And several plaintiffs in that case did so.  (*See* Consents to Become Party in a Collective Action, No. 14-CV-3891, Dkt. Nos. 5-11, 14, 28-29, 48-49, 51, 53-54, 62, 65-66, 68).[1]  Here, again, the parties' proposed structure would require the Court to approve the settlement before employees have become collective members.  Instead, this Court "joins those that have consulted § 216(b)'s requirements and rejected similar opt-in by settlement check proposals."  *Smothers*, 2019 WL 280294, at *11 (collecting cases).

The motion for reconsideration is denied.  Any revised settlement agreement must be provided by **June 20, 2019**.

SO ORDERED.
*/s/ Sanket J. Bulsara* May 30, 2019
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

---

[1] Plaintiffs in at least two other cases cited also filed consents on the docket before any motion for preliminary settlement approval was submitted.  (*See Drouillard v. Sprint Corp*, No. 16-CV-624, Consents to Become Party in a Collective Action, Dkt. Nos. 14, 27-28, 32-37, 44-45, 51-52, 56-104; *Parsley v. Broadhollow Hospitality LLC*, No. 17-CV-97, Consents to Become Party in a Collective Action, Dkt. Nos. 3-4, 10, 23-30, 33).