UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
KIRK DOUGLAS, individually and on behalf of all others
similarly situated,

                                  Plaintiff,

    -against-                                       17-CV-6093-SJB

ALLIED UNIVERSAL SECURITY SERVICES,
ALLIED BARTON SECURITY SERVICES LLC,
AND ALLIED SECURITY HOLDINGS LLC,

                                Defendants.
------------------------------------------------------------------X
**BULSARA, United States Magistrate Judge:**

## ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE SETTLEMENT

This order grants and resolves Plaintiffs' Motion for Preliminary Approval of Class and Collective Action Settlement ("Motion for Preliminary Approval"). Two hearings were held in connection with this motion on February 4, 2019 and July 31, 2019. Defendants do not oppose the Motion.

### Procedural History and Standard for Approval

1. Plaintiff Kirk Douglas filed this action on October 18, 2017, (Compl. dated Oct. 18, 2017, Dkt. No. 1), alleging that he was not fully paid overtime in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). The action was filed as a putative collective and class action.

2. The Court preliminarily approves the settlement contained in the Amended Settlement Agreement and Release ("Amended Settlement Agreement") between Plaintiffs and Allied Universal Security Holdings LLC, Allied Barton Security Services LLC, and Allied Security Holdings, LLC, (hereinafter "Allied" or "Defendants"),

1

which was filed on September 13, 2019.

3. Preliminary approval is the first step in the settlement process. It allows for dissemination of notice to class and collective action members and provides them an opportunity to respond by participating in the settlement, objecting to it, or opting out of it. After the notice period, the Court will conduct a final fairness hearing to determine whether final approval should be granted and judgment entered. The Amended Settlement Agreement contemplates two procedural vehicles operating simultaneously: (a) a class action settlement, pursuant to Federal Rule of Civil Procedure 23, resolving NYLL claims; and (b) a collective action settlement to resolve FLSA claims.

4. To participate in a FLSA collective action, employees who are not named plaintiffs must affirmatively consent or "opt-in" to litigation of their claims. Employees who choose not to opt-in retain their rights to bring their own FLSA claim. In contrast, Rule 23 class actions brought under the NYLL do not require the affirmative consent of class members. Rather, all class members are included as parties unless they affirmatively "opt-out." Any class member who does not opt out will be bound by the subsequent judgment. Thus, an employee can remain in the class, but does not automatically join in the FLSA settlement unless he or she affirmatively opts into the collective action. To satisfy the procedural requirements of Rule 23 and fit within the collective action procedures of Section 216(b) of FLSA, a hybrid settlement agreement, like the parties have proffered in this case, must permit employees an option to opt into the FLSA collective, and simultaneously give them an avenue to opt-out of the NYLL class.

5. The putative class action members are all present and former persons employed as Airport Security Agents, Operation Assistants, or Tour Supervisors at JFK

by Defendants at any time between Sept. 1, 2013 and May 28, 2019.  (Amended Settlement Agreement and Release dated Sept. 13, 2019, attached as Ex. 1 to Aff. in Supp. of Mot. to Certify Class ("Am. Settlement Agreement"), Dkt. No. 53 at 2–3).

6. To grant preliminary approval of a settlement for this class, "the most significant factor for the district judge is the strength of plaintiffs' case balanced against the settlement offer.  Although the district judge in striking this balance should not convert the settlement hearings into a trial on the merits, he is required to explore the facts sufficiently to make an intelligent comparison between the amount of the compromise and the probable recovery." *In re Traffic Exec. Ass'n-E. Railroads*, 627 F.2d 631, 633 (2d Cir. 1980) (citation omitted).  "[T]he granting of [preliminary approval] is not tantamount to a finding that the settlement is fair and reasonable.  It is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *Id*. at 634.  "At the preliminary approval stage of the case, 'the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion.'" *Douglas v. Allied Universal Sec. Servs.*, 371 F. Supp. 3d 78, 82 (E.D.N.Y. 2019) (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)), *reconsideration denied*, 381 F. Supp. 3d 239 (2019); *see* Fed. R. Civ. P. 23(e)(2).

7. The putative collective action members of the proposed FLSA collective, 29 U.S.C. § 216(b) (Compl. ¶ 147), are all present and former persons employed as Airport Security Agents, Operation Assistants, or Tour Supervisors at JFK by Defendants at any time between May 16, 2015 and May 28, 2019.  (Am. Settlement Agreement at 4).

8. To obtain preliminary approval of a settlement for this collective, the

parties must demonstrate that the settlement is consistent with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).  Under *Cheeks* parties cannot privately settle FLSA claims with prejudice absent the approval of the district court and "must satisfy the Court that their agreement is fair and reasonable."  *Cortes v. New Creators, Inc.*, No. 15-CV-5680, 2016 WL 3455383, at *2 (S.D.N.Y. June 20, 2016) (quotations omitted) (citing *Cheeks*, 796 F.3d at 200).  Even for preliminary approval of a collective-wide FLSA settlement, the Court must undertake some *Cheeks* review.  After notice is distributed, the Court conducts a further and final *Cheeks* review.

### The Amended Settlement Agreement

9. The Court has reviewed the submissions made by Plaintiffs' counsel, which include memoranda of law and declarations.  (Mot. for Prelim. Approval dated Sept. 13, 2019 ("Second Mot. to Certify"), Dkt. No. 52; Aff./Decl. in Supp. of Mot. to Certify Class dated Sept. 13, 2019 ("Sept. 13, 2019 Aff."), Dkt. No. 53; Mem. in Supp. of Mot. to Certify Class dated Sept. 13, 2019 ("Sept. 13, 2019 Mem."), Dkt. No. 54; Mot. to Certify Class for Prelim. Approval dated Nov. 30, 2018 ("First Mot. to Certify"), Dkt. No. 33; Aff./ Decl. in Supp. of Mot. to Certify dated Nov. 30, 2018 ("Nov. 30, 2018 Aff."), Dkt. No. 34; Mem. in Supp. of Mot. to Certify Class dated Nov. 30, 2018 ("Nov. 30, 2018 Mem."), Dkt. No. 35).

10. The parties first submitted a settlement for preliminary approval in late November 2018.  Approval was denied, because of the Court's concerns about various aspects of the settlement agreement.  (*See* Min. Entry dated Feb. 4, 2019; Tr. of Mot. to Certify Hr'g on Feb. 4, 2019 ("Feb. 4 Tr."), Dkt. No. 43 at 6:1–5; Order dated Mar. 29, 2019 ("Mar. 29 Order"), Dkt. No. 44 (denying motion to certify class without prejudice to renewal)).  The parties failed to provide sufficient information to conduct a *Cheeks*

4

review of the proposed settlement. (Mar. 29 Order at 6 (denying motion to certify for lack of information regarding litigation risks, attorneys' fees, range of recovery, and costs)). Next, the original settlement agreement and proposed notice failed to provide appropriate methods for putative members to opt into the FLSA collective. Originally, the only way for parties to opt into the FLSA collective was by cashing in their settlement checks. But this cash-in method created several problems. First, "FLSA does not allow the cashing of a settlement check to serve as an employee's consent to become a collective member; after consenting in writing, the written consent must be filed on the docket." (Mar. 29 Order at 10) (citations omitted). Although there was opt-in language on the back of every check, which would be signed by any employee cashing it, there was no mechanism in the agreement for filing such consent with the Court. (*Id.* at 11). Moreover, because parties would not cash in their checks until *after* the final *Cheeks* review, the settlement agreement created a mechanism for the Court to conduct a final *Cheeks* review before any employee had opted into the collective. Under this structure, had the Court approved the settlement agreement at the final *Cheeks* hearing, it would have released Allied from all potential claims against it before any employee of the collective ever appeared before the Court. As a consequence, if the employee declined to join the FLSA collective by failing to cash the check, he or she would neither have the benefit of the settlement nor the ability to bring an FLSA action, a "Hobson's choice that *Cheeks* and a true opt-in process is intended to avoid." (*Id.* at 13).

11.     The Amended Settlement Agreement and the parties' additional submissions address the Court's prior concerns. First, the parties have provided to the Court additional information regarding attorneys' fees, litigation risks, breakdown of costs, and information on the potential or actual wage rate, hours worked, and number

5

of members of the collective. (Sept. 13 Mem. at 16–27). Second, under the structure of the new agreement, the final fairness hearing will be conducted after employees are given a chance to opt into the collective. (Am. Settlement Agreement at 9). Instead of automatically opting into the collective action upon endorsement of the settlement check, employees will now opt-in by sending in a consent form affirming their intention to join the collective. The period to opt into the collective will end before the Court conducts its final *Cheeks* review. The revised notice also clarifies the different rights under the FLSA collective and the NYLL class structure. (*Id.* at 2). The notice now provides separate instructions for objecting and opting into/out of the class and the collective. Specifically, the notice alerts putative FLSA collective members that the "only way" to receive a payment for the proportionate share of the settlement fund for the FLSA claims is to submit a consent form to join the collective. (Proposed Notice at 2) (emphasis in original). If members choose to opt-in and object to the terms of the FLSA settlement, they must write to the Court about why they disagree with the settlement terms. If they object, they may also voice such concerns in person at the Court's fairness hearing. (*Id.* at 2, 9–11). Putative NYLL class members do not need to affirmatively opt-in, but can exclude themselves from the settlement agreement by filing an opt-out statement to Allied Universal. Class members may remain in the class and object to the settlement by writing to the Court. (*Id.*). Alternatively, if they do nothing, they will remain part of the class and receive a proportionate share of the settlement fund for their NYLL claims. (*Id.*).

12. The Parties have agreed to settle for a "Total Settlement Amount" of up to two million five hundred and twenty thousand dollars ($2,520,000). The "Net Settlement Amount" is the remainder of the total settlement amount after deductions

6

for: (1) Court-approved attorneys' fees for Class Counsel of up to seven hundred forty thousand dollars ($740,000), (2) actual costs not to exceed seventy thousand dollars ($70,000), (3) an enhancement award of twenty thousand dollars ($20,000) for Kirk Douglas, and (4) standard employer-side tax obligations, including the Employer Federal Insurance Contributions Act (FICA) amount, as specified in the Amended Settlement Agreement, (Am. Settlement Agreement at 10–11), which are estimated to be fifty-two thousand ($52,000). (*Id.*).

13. Should an employee participate in the class action or collective action settlement, they shall receive a "Settlement Distribution Check" from the Net Settlement Amount.

14. The Amended Settlement Agreement also includes a reversionary provision, which provides for two types of reversion: 1) any uncashed checks after the initial distribution of settlement funds to class and collective members and 2) up to twenty percent (20%) of the amount allocated to the FLSA collective action either because the employee failed to cash a settlement check or because the employee failed to return the consent form and become part of the collective. (Am. Settlement Agreement ¶ 4.7).

**Certification of Settlement Class and Class Counsel Determination**

15. "Provisional settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring a notification of all class members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing." *See Dorn v. Eddington Sec.*, No. 08-CV-10271, 2011 WL 382200, at *1 (S.D.N.Y. Jan. 21, 2011) (conditionally certifying wage and hour

settlement class and granting preliminary approval of settlement).

16. The Court certifies the following NYLL class pursuant to Rule 23(e) for settlement purposes ("Settlement Class"): All present and former individuals employed as Airport Security Agents, Operation Assistants, or Tour Supervisors at JFK by Defendants at any time between Sept. 1, 2013 and May 28, 2019. (Am. Settlement Agreement ¶¶ 2.4, 2.7).

17. The putative class members meet all requirements for class certification under Fed. R. Civ. P. 23(a) and 23(b)(3):

   a. There are over 100 potential class members, thus, joinder is impracticable. Fed. R. Civ. P. 23(a)(1).

   b. Class members share common issues of fact and law, including whether Defendants failed to pay them wages in violation of state wage and hour laws. Fed. R. Civ. P. 23(a)(2).

   c. Named Plaintiffs' claims for overtime pay are typical of the claims of class members. Fed. R. Civ. P. 23(a)(3).

   d. There is nothing to suggest that the named plaintiffs will not fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4).

18. Plaintiffs also satisfy Rule 23(b)(3). Common factual allegations and a common legal theory predominate over any issues affecting only individual employees. Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually.

19. The Court appoints Christopher Q. Davis, Esq. and Rachel M. Haskell, Esq. of the Law Office of Christopher Q. Davis, PLLC, as Class Counsel; they meet all of

the requirements of Fed. R. Civ. P. 23(g). Mr. Davis and Ms. Haskell did substantial work identifying, investigating, and prosecuting the claims and negotiating the proposed settlement. Mr. Davis and Ms. Haskell have previously been certified as Class Counsel. *See Damassia* at 165 (explaining that Rule 23(g) requires the court to consider "the work counsel has done in identifying or investigating potential claims in the action, . . . counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, . . . counsel's knowledge of the applicable law, and . . . the resources counsel will commit to representing the class.") (quotations omitted).

### Approval of Class and Collective Action Settlements

20. The Court has conducted a fairness review of the class action settlement under the factors articulated in *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), and a preliminary evaluation of the fairness of the FLSA settlement under the standards in *Cheeks*.

21. The Court is satisfied that to the extent necessary for preliminary approval that both the class and collective action settlements are fair and reasonable. Among other reasons, this is a complex case with over 100 class and potential collective action members, where the Plaintiffs have a fair amount of litigation risk, because (1) Plaintiffs may not be able to establish liability and damages at trial due to various defenses available to Defendants, (2) Plaintiffs may not be able to certify and maintain the class and/or collective action through trial, and (3) litigation might not result in recovery, might result in a recovery that is less favorable than this settlement, and/or might result in a recovery that might not be obtained for several years. (Supp. Mem. in Supp. of Prelim. Approval dated Apr. 12, 2019 ("Supp. Mem."), Dkt. No. 46 at 10). The parties have engaged in extensive discovery and motion practice to vet their claims and

defenses, and therefore have sufficient information to evaluate the risks of non-settlement and the advantages of settling to the proposed terms. Finally, assuming the best possible recovery, and factoring in the actual costs as of to date ($69,991), (Sept. 13 Mem. at 39), the claims of all class and collective members would amount to $1,638,009. Counsel has indicated that alleged unpaid wages would amount to approximately $3,228,000. (Letter to Judge Bulsara dated Feb. 18, 2019 ("Feb. 18 Letter"), Dkt. No. 41 at 3). The Gross Settlement fund, before the provision of attorneys' fees, service awards, or costs, provides a recovery of $2,520,000. Even after subtracting attorneys' fees, costs, service awards, and taxes, the net settlement amount is around 50% of the value of his or her wage claims. (Feb. 18 Letter at 4). Such a recovery is well within the percentage recovery that this Court and others have found to be sufficiently fair and reasonable. *See Siddiky v. Union Square Hosp. Grp., LLC*, No. 15-CV-9705, 2017 WL 2198158, at *6 (S.D.N.Y. May 17, 2017) (collecting FLSA cases approving settlements where range of recovery for class members ranged from 13 to 25%); *Pauta v. AJC Jewelry Contracting Corp.*, No. 18-CV-6001, 2019 U.S. Dist. LEXIS 62788, at *1–2 (S.D.N.Y. Apr. 10, 2019) (finding 46% recovery well within range of reasonable recovery) (citing *Larrea v. FPC Coffees Realty Co.*, No. 15-CV-1515, 2017 WL 1857246, at *2 (S.D.N.Y. May 5, 2017) (finding recovery of 43% of the anticipated maximum recovery was fair and reasonable)). The Court has reviewed the Settlement Agreement and does not find any term that on its face suggests that the agreement was the product of improper collusion or otherwise contains provisions that are unfair to class or collective action members.

## Notice and Deadlines

22. The Court approves the Proposed Notice of Class and Collective Action

Settlement ("Proposed Notice"), which counsel has revised and filed at Docket Entry 53, and directs its distribution to the class and collective members.

23. A notice must provide "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

24. The Proposed Notice satisfies each of these requirements and adequately gives class and collective action members notice of the proposed settlement. The Proposed Notice describes the terms of the settlement, informs the class and the collective about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. It also informs employees of their right to exclude themselves from the class and bring their own lawsuit against Allied Universal. The notice also makes clear that parties have the right to object to the terms of the settlement and explains how they may have their concerns heard at the Court's final fairness hearing. Finally, the notice informs putative collective members that to become part of the FLSA collective, they must affirmatively mail in the consent to join form.

25. The Court adopts the following timeline to govern the settlement process in this case:

| | |
|---|---|
| Preliminary Approval Granted | October 10, 2019 |
| Defendants Provide Settlement Administrator Class Contract List | October 25, 2019 |
| Notice Mailing and Emailing Deadline | November 10, 2019 |
| Opt-Out Period (last day to submit Opt-Out Statement or an objection) | 60 days after mailing of notice; if notices returned undeliverable 60 calendar days from second mailing, but no more than 90 calendar days from first mailing. |
| Deadline to Submit Consent to Join Form | Any time before Fairness Hearing. |
| Settlement Administrator will stamp the postmark date on the original of each Opt-out Statement, Objection and/or Consent to Join Form that it receives and shall send copies to Counsel | The first Friday after receipt |
| Settlement Administrator will email a final report detailing the results of the class mailings and participation | 1 business day following the expiration of the Opt-Out Period, again 1 business day before the fairness hearing, and anytime upon request. |
| Final Approval Motion and Fee Motion Date | March 6, 2020 |
| Final Approval Hearing Date | March 23, 2020 at 10 AM |
| Final Effective Date | As provided in the Amended Settlement Agreement, Section 2.14 |
| Funding of QSF required from Defendants | 15 days after the Final Effective Date |
| Settlement Administrator to mail checks to Claimants and Opt-in Claimants, class counsel, class representative's enhancement award | 30 days after the Final Effective Date |
| Acceptance Period (i.e. checks voided if not negotiated) | 90 days after the date of the mailing of the checks. |

                                                                           SO ORDERED.

                                                                            */s/ Sanket J. Bulsara* October 10, 2019
                                                                            SANKET J. BULSARA
                                                                            United States Magistrate Judge

Brooklyn, New York