UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KIRK DOUGLAS,
*individually and on behalf of all others similarly situated*,

                       Plaintiff,

    -against-                                  **ORDER**
                                                     17-CV-6093-SJB
ALLIED UNIVERSAL SECURITY SERVICES,
ALLIED BARTON SECURITY SERVICES LLC,
ALLIED SECURITY HOLDINGS LLC,

                       Defendants.
-----------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

On March 13, 2020, Plaintiff Kirk Douglas ("Douglas") filed two motions in this case brought against Defendants Allied Universal Security Services, Allied Barton Security Services LLC, and Allied Security Holdings LLC (collectively "Allied" or "Defendants"). The first is a motion for final approval of the parties' settlement of a collective action resolving Fair Labor Standards Act ("FLSA") claims, as required by *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), and a class action settlement, as required by Rule 23(e) resolving claims brought pursuant to the New York Labor Law (NYLL). (Mot. for Settlement Approval dated Mar. 13, 2020 ("Settlement Approval Mot."), Dkt. No. 60). The other seeks attorney's fees and costs. (Mot. for Att'y Fees ("Fees and Costs Mot.") dated Mar. 13, 2020, Dkt. No. 63). On April 29, 2020, the Court held a final fairness and approval hearing on the settlement via telephone. (Min. Entry dated Apr. 29, 2020). For the reasons stated below, the motions are granted.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff Kirk Douglas, a former Security Guard and Supervisor providing security services at John F. Kennedy Airport, filed this action on October 18, 2017 on behalf of similarly situated Security Agents, Operations Assistants, and Supervisors who are or have been employed by Allied anytime within three to six years prior to the filing of the action. (Compl. dated Oct. 18, 2017, Dkt. No. 1–2). Douglas alleged that Allied failed to pay its employees their minimum wage compensation, "gap time" compensation, and overtime compensation, and made unlawful deductions in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). (*Id.*). The action was filed as a putative collective and class action. (*Id.* ¶ 1). On August 21, 2018, the parties reported that they had reached a settlement. (Status Report dated Aug. 21, 2018, Dkt. No. 29).

After consenting to Magistrate Judge jurisdiction, the parties filed a joint motion for preliminary approval of the settlement. (Mot. for Preliminary Approval dated Nov. 30, 2018, Dkt. No. 33; *see* Settlement Agreement dated Nov. 30, 2018, attached as Ex. 1 to Aff. in Supp. of Mot. for Preliminary Approval, Dkt. No. 34). The Court denied the initial motion for preliminary approval; the parties were directed to file a revised settlement agreement and motion for preliminary approval. (Order dated Mar. 29, 2019, Dkt. No. 44). The parties then filed a revised motion for preliminary approval and settlement agreement in accordance with the Court's orders. (Mot. for Preliminary Approval ("Prelim. Settlement Mot.") dated Sept. 13, 2019, Dkt. No. 52; *see* Settlement Agreement and Notice dated Sept. 13, 2019 ("Revised Settlement Agreement and Notice"), attached as Ex. 1 to Aff. in Supp. of Mot. for Preliminary Approval, Dkt. No. 53). On October 10, 2019, the Court granted the parties' motion for preliminary

2

approval of the settlement. (Order dated Oct. 10, 2019, Dkt. No. 55).

This settlement is a hybrid class and collective action settlement; it contemplates two procedural vehicles operating simultaneously: (a) a class action settlement, pursuant to Federal Rule of Civil Procedure 23, resolving NYLL claims; and (b) a collective action settlement to resolve FLSA claims. The putative class action members are all present and former persons employed as Airport Security Agents, Operation Assistants, or Tour Supervisors at JFK by Defendants at any time between Sept. 1, 2013 and May 28, 2019. (Final Settlement Agreement dated Mar. 13, 2020 ("Final Settlement Agreement"), attached as Ex. 1 to Aff. in Supp of Mot. for Settlement Approval, Dkt. No. 61 §§ 2.4, 2.7). The putative collective action members of the proposed FLSA collective, 29 U.S.C. § 216(b) (Compl. ¶ 147), are all present and former persons employed as Airport Security Agents, Operation Assistants, or Tour Supervisors at JFK by Defendants at any time between May 16, 2015 and May 28, 2019. (Final Settlement Agreement §§ 2.17, 2.7). To participate in the FLSA collective action, employees who are not named plaintiffs were required to affirmatively consent or "opt-in" to the collective action. Employees who chose not to opt-in retained their rights to bring their own FLSA claim. In contrast, Rule 23 class actions brought under the NYLL do not require the affirmative consent of class members. Rather, all class members were included as parties unless they affirmatively "opted-out." Any class member who did not opt out is bound by the final judgment. Thus, an employee had the option to remain in the class, but not the FLSA collective action.[1]

---

[1] *See Marichal v. Attending Home Care Servs., LLC*, -- F. Supp. 3d --, No. 17-CV-6756, 2020 WL 278415, at *4 (E.D.N.Y. Jan. 13, 2020) ("[T]he affirmative assent of each opt-in plaintiff—as a party to the case—is required [to settle his claims].").

On November 12, 2019, notices with information about the settlement were sent via first class U.S. mail to the 595 class and collective members and to the 126 Class Members who were only members of the NYLL Class, and had no FLSA claim. (Claims Admin Decl. dated Mar. 13, 2020 ("Claims Admin Decl."), attached as Ex. D to Aff. in Supp. of Mot. for Attorney's Fees, Dkt. No. 64 ¶ 6). The notice alerted putative FLSA collective members that the "only way" to receive a payment for the proportionate share of the settlement fund for the FLSA claims is to submit a consent form to join the collective. (Notice attached as Ex. A to Claims Admin Decl., Dkt. No. 62 at 2) (emphasis in original). If members choose to opt-in and object to the terms of the FLSA settlement, they were required to write to the Court about why they disagree with the settlement terms. Putative NYLL class members did not need to affirmatively opt-in, but could exclude themselves from the settlement agreement by filing an opt-out statement to Allied. Class members could remain in the class and object to the settlement by writing to the Court. (*Id.*). Alternatively, if they did nothing, they would remain part of the class and receive a proportionate share of the settlement fund for their NYLL claims. (*Id.*). Finally, the notice also included the date of the final fairness hearing, which was originally scheduled for March 23, 2020. (*Id.* at 2). The Hearing was then rescheduled to a telephone conference for April 29, 2020. (Order dated Mar. 17, 2020). All class and collective members were provided the revised date and instructions on how to participate in the telephone conference by both email and text message. (Letter dated Mar. 18, 2020, Dkt. No. 67).

The Court concludes that the Notices fairly and adequately advised Class Members and FLSA Collective Members of the nature of the action, a description of the Class and Collective Action, the Class Members' right to exclude themselves from the

4

settlement, the right of Class Members to object to the settlement, the right of Collective Members to file Consent to Join Forms, the right of Class Members and Collective Members to be represented by their own counsel, and the right of Class and Collective Members to appear at the Final Fairness Hearing. Class and Collective Members were provided the best notice practicable under the circumstances. The Court also concludes that the Notices and distribution of such Notices complied fully with Fed. R. Civ. P. 23 and the Fair Labor Standards Act, 29 U.S.C. §§ 201.

On March 13, 2020, the parties filed motions for final settlement approval and attorney's fees. (*See* Settlement Approval Mot.). The Court held the fairness hearing on April 29, 2020. Counsel for plaintiffs and defendants were present, as were several class and/or collective members. (Min. Order dated Apr. 29, 2020). Following the fairness hearing, Plaintiffs' counsel submitted a letter clarifying and updating the Court on the total number of consent forms filed. (Letter dated Apr. 30, 2020 ("Apr. 30 Letter"), Dkt. No. 69).

In all, 428 FLSA Collective Members have submitted consent forms to participate in the settlement, *i.e.* 71.9% of the 595 identified FLSA Collective Members opted into the collective. (Apr. 30 Letter; Mem. in Supp. of Mot. for Settlement Approval dated Mar. 13, 2020 ("Settlement Approval Mem."), Dkt. No. 62 at 10). There was one objection to the Settlement (by a NYLL class member) and one Class Member chose to opt-out of the class action settlement by submitting a request for exclusion. (Settlement Approval Mem. at 29). The objection was filed by Kevin McNamara who claims that he is entitled to a larger settlement amount. (Letter dated Feb. 14, 2020 ("McNamara Letter"), Dkt. No. 56).

5

The Gross Settlement fund, before the provision of attorney's fees, service awards, or costs, provides a recovery of $2,520,000. (Final Settlement Agreement § 4.1). The "Net Settlement Amount" is the remainder of the total settlement amount after deductions for fees, costs, service awards, and standard employer-side tax obligations, including the Employer Federal Insurance Contributions Act (FICA) amount, as specified in the Settlement Agreement. (*Id.*). The Settlement Agreement also includes a reversionary provision for two types of reversion: 1) any uncashed checks after the initial distribution of settlement funds to class and collective members and 2) up to twenty percent (20%) of the amount allocated to the FLSA collective action either because the employee failed to cash a settlement check or because the employee failed to return the consent form and become part of the collective. (Final Settlement Agreement § 4.7).

The total amount of the Net Settlement Amount attributed to FLSA Claims versus NYLL Claims shall be fifty percent (50%) of the FLSA Collective Members' combined Total Settlement Shares (the "FLSA Settlement Allocation"). (Final Settlement Agreement § 4.4). As such, if (1) a Claimant is not an FLSA Collective Member, he or she shall receive 100% of his or her Total Settlement Share; (2) a Claimant is an FLSA Collective Member, but failed to become an Opt-in Claimant, he or she shall receive only 50% of his or her Total Settlement Share; (3) a Claimant is an FLSA Collective Member, and became an Opt-in Claimant, he or she shall receive 100% of his or her Total Settlement Share; and (4) an individual is an Opt-in Claimant but not a Claimant (because he or she chose to opt-out) the Opt-in Claimant shall receive 50% of his or her Total Settlement Share. (*Id.*).

As to attorney's fees and costs, plaintiffs' counsel request an award of $740,000 for attorney's fees and an award for expenses and costs not to exceed $70,000. (Mem. of Law in Supp. ("Fee and Cost Mem.") dated Mar. 13, 2020, Dkt. No. 65 at 31; Final Settlement Agreement § 4.6).

DISCUSSION

I. Final Collective Action Approval

A settlement that disposes of FLSA claims with prejudice must be approved by the Court. To approve such a settlement, the Court must find that the agreement is fair, *i.e.*, that it "reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Information Networking Computing, USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at * 1 (E.D.N.Y. Mar. 13, 2008) (internal quotations and citation omitted); *see also Cheeks*, 796 F.3d at 207 (requiring court approval in FLSA actions "to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees").

In determining whether a FLSA settlement is fair, the Court considers:

(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (quoting *Wolinksy v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335–36 (S.D.N.Y. 2012)); *see also Cheeks*, 796 F.3d at 206.

A.      Range of Recovery

As the Court previously found in granting preliminary approval, the settlement amount as reflected in the settlement agreement and in the supplemental materials provides the collective action members with a recovery that is substantial and fair, particularly in light of the litigation risks faced by both parties. (Order granting Preliminary Approval dated Oct. 10, 2019, Dkt. No. 55).

Of the Net Settlement Amount, $1,495,403.37 is being allocated to the individuals who are FLSA Collective Members and NYLL Class Members, and $71,938.92 is being allocated to the individuals who are NYLL Class Members only. The unclaimed portion of the Net Settlement Amount, in the amount of $70,657.71 will be added to the reversion/redistribution fund to be allocated to participating employees after the check expiration deadline. (Claims Admin Decl. ¶ 13).

Plaintiffs' counsel represent that currently, the allocation of the Net Settlement Amount among participating employees will yield a payment of $31,513.66 as the highest payment and a median payment of $826.61. (*Id.* ¶ 14). Counsel has indicated that alleged unpaid wages would for these employees would be approximately $3,228,000. (Letter to Judge Bulsara dated Feb. 18, 2019 ("Feb. 18 Letter"), Dkt. No. 41 at 3). Even after subtracting attorney's fees, costs, service awards, and taxes, the net settlement amount is around 50% of the value of his or her alleged lost wage claims. (Feb. 18 Letter at 4).

Considering the significant litigation risks the plaintiffs face, these percentages represent a recovery that is fair and reasonable. (*E.g.*, Fee and Cost Mem. at 14 ("[T]he facts and circumstances of this case presented numerous hurdles to a successful recovery. Plaintiffs' off-the-clock claims hinged on their ability to prove actual or

8

imputed knowledge that Class Members were working off-the-clock. Plaintiffs would also have to overcome Defendants' defenses that individualized inquiries predominated.")). Other FLSA settlements with similar—or even smaller—percentages of recovery have been approved by courts in this Circuit. *See, e.g., Cumbe v. Peter Pan Donuts & Pastries Inc.*, No. 16-CV-392, 2018 WL 3742689, at *1 (E.D.N.Y. May 15, 2018) ("Plaintiff will receive about 53% of his maximum recovery, which is in line with the proportion recovered in similar cases where courts have approved a settlement."), *report and recommendation adopted*, 2018 WL 3742634 (May 30, 2018); *Rodriguez-Hernandez v. K Bread & Co., Inc.*, No. 15-CV-6848, 2017 WL 2266874, at *4 (S.D.N.Y. May 23, 2017) (approving a settlement of 26% of potential damages given "bona fide disputes" between the parties and litigation risks).

      B.     <u>Attorney's Fees and Costs</u>

The motion for attorney's fees requests fees of $740,000 and costs of up to but no more than $70,000. While considerable, the Court approves the fee and cost request. *See* 29 U.S.C. § 216(b) ("The Court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").

The Court finds that the attorney's fees and costs portion of the settlement is reasonable and commensurate with the degree of success obtained, *see Fisher*, 948 F.3d at 606–07. The amount of requested attorney's fees and costs equals less than one-third of the settlement fund of $2,520,000. (*See* Final Settlement Agreement § 4.6). While the total amount sought—$810,000—is substantial, it is in line with what courts have approved in other fund-based FLSA settlement agreements. *See, e g., Kochilas v. Nat'l Merch. Servs., Inc.*, No. 14-CV-311, 2015 WL 5821631, at *9 (E.D.N.Y. Oct. 2, 2015) ("In

9

choosing the proper baseline for calculation of fee percentage, our Circuit case law directs courts to focus on fairly compensating counsel for work actually performed, given that *the entire fund, and not some portion of it, is created through the efforts of counsel* at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not.") (emphasis added) (citing *Alleyne v. Time Moving and Storage, Inc.*, 264 F.R.D. 41, 58–59 (E.D.N.Y. 2010)) (quotations and alterations omitted).

The Court therefore approves the $740,000 fee and up to $70,000 cost request. *See, e.g., Karic v. Major Auto. Cos.*, 09-CV-5708, 2016 WL 1745037, at *8 (E.D.N.Y. Apr. 27, 2016) (approving attorney's fees in the amount of one-third of the settlement fund and noting that "[c]ourts in this Circuit have often approved requests for attorneys' fees amounting to 33.3% of a settlement fund"); *Johnson*, 2011 WL 4357376, at *12.[2]

C.   Scope of the Waiver

The release in the settlement agreement is limited in scope and is not a barrier to settlement approval. The employees who participated in the settlement agreed to release only their potential FLSA and NYLL claims; the waiver is not a general release of all possible claims against Defendants. (Settlement Agreement §§ 5.1, 5.2). Given the narrow release in the settlement agreement, the Court finds that this portion of the settlement is appropriate. *See, e.g., Weston v. TechSol, LLC*, No. 17-CV-0141, 2018 WL 4693527, at *5 (E.D.N.Y. Sept. 26, 2018) (finding in a FLSA settlement that "the releases

---

[2] Counsel has indicated that the anticipated costs, which include $18,000 in claims administration costs for administering notice and settlement checks, are approximately, $75,000. (Decl. of Christopher Q. Davis dated Mar. 13, 2020 ("Davis Decl."), Dkt. No. 64 ¶ 5). These costs have been adequately documented. (Ex. C. attached to Davis Decl., Dkt. No. 64).

to be executed are fair and reasonable and limited to the wage claims that the participating collective members have against defendant").

D. Other Provisions

There are no other provisions that make the Court question whether the agreement was the product of overreaching. *See, e.g.*, *Cumbe*, 2018 WL 3742689, at *1.

In light of the foregoing, the Court concludes that the *Wolinsky* factors have been satisfied, and the settlement is consistent with *Cheeks*. The Court therefore grants final approval to the Collective Action settlement. *See, e.g.*, *Brack v. MTA New York City Transit*, No. 18-CV-846, Dkt. No. 80.

II. Final Approval of NYLL Class Action

Under the Federal Rule of Civil Procedure 23(e), "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Courts may approve class action settlements where the settlement is found to be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(c); *People v. Annucci*, 180 F. Supp. 3d 294, 307 (S.D.N.Y. 2016). "To determine whether a settlement is fair, reasonable, and adequate, the Second Circuit instructs district courts to examine 'the negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness.'" *Stinson v. City of New York*, 256 F. Supp. 3d 283, 288 (S.D.N.Y., 2017) (quoting *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803–804 (2d Cir. 2009). In making this determination, courts in the Second Circuit consider the nine "*Grinnell*" factors outlined in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5)

11

> the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Of these factors, "[i]t is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re Bear Stearns Companies, Inc. Securities, Derivative, and ERISA Litigation*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012) (quotations omitted).

"Settlement approval is within the Court's discretion, which should be exercised in light of the general judicial policy favoring settlement." *In re Giant Interactive Group, Inc. Securities Litigation*, 279 F.R.D. 151, 159–60 (S.D.N.Y. 2011) (quotations omitted); *see also Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context." (quotations omitted)). As such, "absent fraud or collusion, courts should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Annucci*, 180 F. Supp. 3d at 307 (citations and quotations omitted).

For the reasons stated in the Court's Preliminary Approval Order and the rationale for final approval of the collective action settlement, the Court finds that the NYLL class action should also be approved. As noted, many of the collective action members are class members, and the range of recovery analysis that the Court previously conducted, applies with equal force to the class action claims (because, among other reasons, employees receive a single check, reflecting a consolidated

amount recovery under FLSA and NYLL).[3] *See Sealock v. Covance, Inc.*, No. 17-CV-5857, 2020 U.S. Dist. LEXIS 44753, *6 (S.D.N.Y. Mar. 13, 2020) (considering *Wolinsky* and *Grinnell* factors together); *Riedel v. Acqua Ancien Bath New York LLC*, No. 14-CV-7238, 2016 WL 3144375, at *7 (S.D.N.Y. May 19, 2016) (same).

In addition, there was only one objection to the settlement and only one class member opted-out of the settlement by submitting a request for exclusion. (Davis Decl. ¶ 119). The objecting party, Kevin McNamara, asks that the Court reconsider the amount awarded to him in light of the additional hours he worked without pay as a Driving Instructor and Fire Safety Director for Allied. (McNamara Letter). Plaintiffs' counsel opposes McNamara's objections, arguing that much of McNamara's overtime claims are for hours worked outside of what is covered by the scope of this litigation because they were not common responsibilities shared amongst all Tour Supervisors. (Settlement Approval Mem. at 38; Davis Decl. ¶ 126). Counsel also asserts that McNamara's credibility was called into question when he made certain contradictory statements at his deposition. (Settlement Approval Mem. at 39; Davis Decl. ¶ 129).

The Court has independently reviewed the objection and finds that the basis for the Class Member's objection—that McNamara is entitled to more money under the settlement—is not grounds for this Court to reject the settlement. McNamara did not appear at the hearing, and therefore the Court has no reason to doubt that the alleged

---

[3] The Court also awards a Service Payment of twenty thousand dollars ($20,000) to Kirk Douglas from the Gross Settlement Amount. This Service Payment is reasonable in light of the efforts Mr. Douglas has expended in furthering the Class and Collective Members' interests. *See, e.g., Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 434 (S.D.N.Y. 2014) (awarding service awards of $20,000 to each class representative).

13

basis on which he claims an entitlement for more money—additional responsibilities—is without merit, for the reasons provided by class counsel. Given that counsel avers that McNamara's additional responsibilities are not within the scope of the litigation, his objection provides no basis to doubt the fairness of the proposed settlement resolving claims of those with common responsibilities. McNamara's objection does not address, and therefore does not undercut, the methodology for determining the settlement amounts for individuals who did not have the additional responsibilities. Even if his objection did address the claims at issue in this litigation, the objection of one employee would be insufficient to override the desire of the several hundred other employees who affirmatively wish to participate in the settlement, and compromise their claims for the amounts proffered by Defendants. The more appropriate remedy for McNamara would have been to submit an opt-out Statement and bring his own litigation. The Court overrules his objection and provides final approval of the class action settlement as consistent with all the *Grinnell* factors.

This action is hereby dismissed on the merits with prejudice. All Claimants, meaning all Rule 23 Class Members except the one (1) Class Member who requested to be excluded, are hereby permanently barred from prosecuting against the Released Parties (as defined in the Settlement Agreement at Section 1.29) any and all Released State Law Claims. In addition, all Opt-in Claimants, meaning all FLSA Collective Members who timely submitted a Consent to Join Form, are deemed to have released both the Released State Law Claims and the Released Federal Law Claims, and are permanently barred from prosecuting against the Released Parties any and all Released State Law Claims and Released Federal Law Claims. Though the Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement, the

Clerk is directed to use this Order as a basis to enter Final Judgment. The parties shall abide by all terms of the Settlement Agreement and this Order.

## CONCLUSION

For the reasons explained above, the Court grants the motions and finds that:

1. The FLSA settlement satisfies the requirements of *Cheeks* and its progeny; and

2. The NYLL class action settlement is fair, reasonable, and adequate, and satisfies the requirements of Rule 23(e); and

3. Plaintiffs' counsel is entitled to an award of $740,000; and

4. Plaintiffs' counsel is entitled to an amount not to exceed $70,000 for costs and expenses, including but not limited to the claims administration fees; and

5. Kirk Douglas is entitled to a service payment of $20,000.

The Clerk is directed to enter Final Judgment consistent with this Order and to close this case.

SO ORDERED.

*/s/ Sanket J. Bulsara* May 6, 2020
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York